[No. 13459. Third Dist. Aug. 6, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JACK ALLAN FOLEY, Defendant and Appellant.

1040

1042

## COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Charles M. Bonneau and Gabriel C. Vivas, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller, Gary A. Binkerd and Cynthia Besemer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

SIMS, J.—In this case, we hold a supplemental presentence probation report must be prepared for use at a defendant's resentencing following an appeal, even where the defendant is ineligible for probation. In so holding, we disapprove a footnote to the contrary in our prior opinion in *People* v. *Savala* (1983) 147 Cal.App.3d 63 [195 Cal.Rptr. 193]. We also determine that in prosecutions for multiple offenses which include violation of either

Penal Code[1] section 286, subdivision (c) or section 288a, subdivision (c) involving a threat of great bodily harm, the prosecution should plead that the latter crimes were accomplished by "threat of great bodily harm," and the jury should make a special finding whether the pleaded assertion is true, so the trial court will know whether it has discretion to impose a full-term consecutive sentence for conviction of either of those sections under section 667.6, subdivision (c).

Defendant Jack Allan Foley was convicted by jury of one count of sodomy by force, etc. (§ 286, subd. (c)), one count of rape by force or fear (§ 261, subd. (2)), and one count of false imprisonment (§ 236) for criminal acts committed by him on September 5 and 6, 1981. Defendant was originally sentenced to the middle term of six years for violation of subdivision (2) of section 261, and a full, consecutive middle term of six years for violation of subdivision (c) of section 286, pursuant to subdivision (c) of section 667.6. The sentence for violation of section 236 (false imprisonment) was stayed pursuant to section 654.

Defendant appealed his conviction and sentence to this court. In an unpublished opinion (3 Crim. 12341, Oct. 7, 1983) we affirmed the conviction but concluded the trial court had not stated reasons for imposition of full-term consecutive sentences as required by *People* v. *Belmontes* (1983) 34 Cal.3d 335 [193 Cal.Rptr. 882, 667 P.2d 686]. We therefore remanded the case for resentencing. (3 Crim 12341, *supra,* at p. 14.)

On remand the trial court refused defendant's request for a supplemental probation report. The court then imposed the same sentence it had imposed following trial, except that it apparently made the term imposed for sodomy the principal term and ran the full six-year term for rape consecutive to it.[2] Defendant again appeals his sentence. We will again remand for resentencing.

I

■ Defendant contends the trial court erred in refusing his request for a supplemental probation report for use at his resentencing.

---

[1] All statutory references are to the Penal Code unless indicated otherwise.

[2] At the resentencing, the trial court said, "I think it . . . appropriate that the sentence for one count of sodomy, in violation of section 286, subdivision c, and one count of rape, in violation of Penal Code section 261, subdivision 2, should be fully consecutive and unstayed." We have examined the reasons stated by the trial court for imposing full consecutive sentences at defendant's last sentencing. None of the reasons stated was peculiar to the rape or to the sodomy nor did the court state any other reasons justifying the serial order in which the terms were imposed. In light of our conclusion that the case must be remanded for resentencing, it is unnecessary to explore any ambiguity in the sentence further.

■ It is settled that, where a defendant is eligible for probation, a supplemental probation report must be prepared prior to a resentencing following an appeal. (§ 1203, subd. (b); *People* v. *Rojas* (1962) 57 Cal.2d 676, 680-682 [21 Cal.Rptr. 564, 371 P.2d 300]; *People* v. *Cooper* (1984) 153 Cal.App.3d 480 [200 Cal.Rptr. 317]; *Van Velzer* v. *Superior Court* (1984) 152 Cal.App.3d 742 [199 Cal.Rptr. 695].)

■ In the instant case, subdivision (a) of section 1203.065 precluded a grant of probation to defendant because he was convicted of rape by force or fear in violation of subdivision (2) of section 261. (Stats. 1980, ch. 587, § 5, p. 1598.)

In *People* v. *Savala, supra,* 147 Cal.App.3d 63, this court, in a footnote, rejected defendant's contention a supplemental probation report had to be prepared prior to the resentencing of a defendant who was *in*eligible for probation. We reasoned that since California does not permit a more severe sentence on remand, no supplemental probation report was required. (*Id.,* at p. 70, fn. 4.)

In *People* v. *Brady* (1984) 162 Cal.App.3d 1 [208 Cal.Rptr. 21], the Fifth District, in its own footnote (*id.,* at p. 4, fn. 2) criticized *Savala*[3] and held "that upon remand for resentencing, even when the defendant is ineligible for probation, if the resentencing court has discretion to alter the length of the defendant's imprisonment, it must obtain a new, updated probation report, including information regarding the defendant's behavior while incarcerated during the pendency of any appeal, before proceeding with the resentencing." (*Id.,* at p. 7; followed by the same court in *People* v. *Smith* (1985) 166 Cal.App.3d 1003, 1009 [212 Cal.Rptr. 737].) Although not entirely clear, *Brady* apparently concluded a defendant's behavior in prison during an appeal could be used by the court to reduce but not to increase the prison term originally imposed. (*Id.,* at p. 4, fn. 2.) While we do not agree entirely with *Brady*'s reasoning, we conclude our footnote in *Savala* stubbed its toe and *Brady* reached a correct result. By way of explanation, we turn first to the statutes governing sentencing and to rules of court promulgated thereunder. (§ 1170.3.)

As *Brady* notes, subdivision (b) of section 1170 provides in pertinent part, "In determining whether there are circumstances that justify imposition of the upper or lower term, the court may consider the record in the case, *the probation officer's report* . . . ." (*People* v. *Brady, supra,* 162 Cal.App.3d at p. 6, italics in original.) Moreover, rule 418 of the California Rules of

---

[3]Clearly the time has come to end this clash of footnotes and to move the issue into legible type.

Court[4] states, "Regardless of the defendant's eligibility for probation, the sentencing judge should refer the matter to the probation officer for a pre-sentence investigation and report." Clearly, then, a probation report is required prior to the original sentencing of a defendant who is ineligible for probation. Neither section 1170, subdivision (b) nor rule 418 distinguishes between an original sentencing and a resentencing. Upon resentencing, a defendant is entitled to all the normal rights and procedures available at his original sentencing. (*Van Velzer* v. *Superior Court, supra,* 152 Cal.App.3d at p. 744.) Consequently, we presume section 1170, subdivision (b) and rule 418 contemplate that a probation report should be prepared prior to a defendant's resentencing.

■ Nonetheless, we must ask whether such a report could provide the sentencing judge with useful information, since we will not presume the Legislature intended that probation reports be prepared just for the fun of it. We conclude such a supplemental report has obvious utility. At a minimum, the report can state the sentence originally imposed, summarize the errors found by the appellate court, and direct the trial court's attention to the rules of court applicable to the resentencing.

■ This leaves the question whether the report should recount a defendant's behavior in prison during his appeal. Once again, we begin by looking at the statutes and rules.

Subdivision (b) of section 1170 provides in pertinent part that, in setting a term, "the court may consider . . . other reports including reports received pursuant to Section 1203.03 . . . ." (See *People* v. *Cheatham* (1979) 23 Cal.3d 829, 836 [153 Cal.Rptr. 585, 591 P.2d 1237].) Since a diagnostic evaluation pursuant to section 1203.03 is made in a prison setting and is appropriate only "In any case in which a defendant is convicted of an offense punishable by imprisonment in the state prison," the statute clearly contemplates that the sentencing judge be able to consider a defendant's postconviction behavior in prison in setting a term. (See *People* v. *Flores* (1981) 115 Cal.App.3d 924, 928-929 [171 Cal.Rptr. 777].) If a defendant's postconviction behavior in prison is relevant to setting his term at his original sentencing, we can see no reason why it would not be relevant to the setting of his term upon resentencing.

Here, however, defendant's postsentencing behavior is subject to a constitutional rule limiting its use upon resentencing. ■ The prohibition on double jeopardy in the California Constitution (art. I, § 15) generally prohibits imposition of a greater sentence upon resentencing following an ap-

---

[4]All further references to rules are to the California Rules of Court.

peal. (*People* v. *Collins* (1978) 21 Cal.3d 208, 216-217 [145 Cal.Rptr. 686, 577 P.2d 1026]; *People* v. *Henderson* (1963) 60 Cal.2d 482, 495-497 [35 Cal.Rptr. 77, 386 P.2d 677].) This rule is inapplicable where the trial court has pronounced an unauthorized sentence wholly in excess of the court's jurisdiction. (*In re Ricky H.* (1981) 30 Cal.3d 176, 191 [178 Cal.Rptr. 324, 636 P.2d 13]; *People* v. *Serrato* (1973) 9 Cal.3d 753, 763-765 [109 Cal.Rptr. 65, 512 P.2d 289], overruled on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144].) However, where, as here, the sentence is authorized by statute, but there are errors in its *application* at sentencing, the double jeopardy provision of the California Constitution prohibits imposition of a greater term upon resentencing.[5] (*People* v. *Burns* (1984) 158 Cal.App.3d 1178, 1184 [205 Cal.Rptr. 356].)

It follows that defendant's behavior in prison may not be used to enhance his sentence in excess of that originally imposed.[6] Thus, our premise in

---

[5]Both *Brady* and *Savala* rely on *In re Rodriguez* (1975) 14 Cal.3d 639 [122 Cal.Rptr. 552, 537 P.2d 384]. (See *Savala, supra,* 147 Cal.App.3d at p. 70, fn. 4; *Brady, supra,* 162 Cal.App.3d at p. 4, fn. 2.) There Rodriguez brought habeas corpus after having served 22 years of an indeterminate sentence imposed under the former Indeterminate Sentence Law (hereafter ISL) for a nonviolent violation of section 288. (*Rodriguez, supra,* 14 Cal.3d at pp. 642-643.) At the time, ISL provided that, in sentencing a defendant to state prison, the sentencing judge should sentence a defendant to an indeterminate "term fixed by law"—in Rodriguez's case, the statutory term was one year to life in state prison. (*Id.,* at p. 643.) Responsibility for determining the actual length of the term, within the statutory maxima and minima, and for deciding when to release a prisoner on parole, was delegated by ISL to the Adult Authority. (*Id.,* at p. 645.) Even though Rodriguez's conduct in prison had been exemplary, the Adult Authority had never set his term at less than the maximum (life) and had never released him on parole. (*Id.,* at p. 644.)

Ordering Rodriguez discharged from confinement, our Supreme Court concluded he had served a term disproportionate to his offense, so that his punishment was both cruel and unusual in violation of article I, section 17, of the California Constitution. (*Id.,* at p. 656.) In the midst of an extended discussion of the term setting power of the Adult Authority, the court ruled that "the primary term must reflect the circumstances existing at the time of the offense." (P. 652.)

Since we resolve the instant case on principles of double jeopardy, we have no occasion to consider whether this rule is one of statutory interpretation peculiar to ISL or whether it is a rule of constitutional magnitude. (See *People* v. *Colley* (1980) 113 Cal.App.3d 870, 873 [170 Cal.Rptr. 339]; compare *In re Stanley* (1976) 54 Cal.App.3d 1030, 1041 [126 Cal.Rptr. 524, 128 Cal.Rptr. 829]; see generally Comment, *The Supreme Court of California 1974-1975* (1976) 64 Cal.L.Rev. 229, 412-417; Comment, *Prohibiting Cruel or Unusual Punishment: California's Requirement of Proportionate Sentencing After Wingo and Rodriguez* (1976) 10 U.S.F. L.Rev. 524.)

[6]California's double jeopardy rule is designed "to preclude vindictiveness and more generally to avoid penalizing a defendant for pursuing a successful appeal." (*People* v. *Collins, supra,* 21 Cal.3d at p. 216.)

The United States Supreme Court has recently recognized that factors occurring during an appeal can properly be used to increase a sentence at resentencing. Just last term, in *Wasman* v. *United States* (1984) 468 U.S. 559 [82 L.Ed.2d 424, 104 S.Ct. 3217] the court unanimously held the due process clause of the Fifth Amendment was not violated when a federal defendant was given a greater sentence after retrial following a successful appeal

*Savala* was correct. However, our conclusion was not. ■ The fact that defendant's behavior in prison may not be used to enhance his sentence does not mean a supplemental probation report is without utility. We have already pointed out that a supplemental report can inform the court of the background of the case and of errors to be remedied at resentencing. Moreover, as *Brady* implicitly acknowledges, a defendant's constitutional rights are not violated when he is allowed to rely on his behavior during an appeal to *reduce* his term of imprisonment at resentencing. (See *People* v. *Brady, supra,* 162 Cal.App.3d at p. 4, fn. 2.)

Of course, this does not mean a supplemental probation report must report only the favorable aspects of a defendant's behavior while in prison. While the addage "If you can't say anything nice, don't say anything at all" may make for good manners, it does not make for good probation reports. The statutes and rules envision that an objective report on defendant's in-prison behavior should be prepared; only the *use* of such reported behavior to *aggravate* the new sentence is prohibited.

■ In the instant case, the trial court erred in refusing defendant's request for a supplemental probation report. Nor can we assume preparation of such a report would be an idle act. (Cf. *People* v. *Dunnahoo* (1984) 152 Cal.App.3d 561, 579 [199 Cal.Rptr. 796].) Defendant had never before been convicted of any criminal offense. After his original sentencing, while his appeal was pending, he testified for the People in a prosecution arising out of the commission of an offense in prison. At the resentencing hearing, defendant asked the court why he had received no administrative reduction in his sentence by the Department of Corrections in light of his testimony. (See tit. 15, Cal.Admin.Code, § 3043, subd. (d)(3).) The sentencing judge

---

than he had been given after his original conviction because the sentencing court considered, as an aggravating factor, an intervening criminal conviction. (468 U.S. at p. — [82 L.Ed.2d at p. 428].)

"Consideration of a criminal conviction obtained in the interim between an original sentencing and a sentencing after retrial is manifestly legitimate. This amply rebuts any presumption of vindictiveness. Here, the trial judge's justification is plain even from the record of petitioner's first sentencing proceeding; the judge informed the parties that, although he did not consider pending *charges* when sentencing a defendant, he always took into account prior criminal *convictions*. This, of course, was proper; indeed, failure to do so would have been inappropriate." (*Id.,* at p. — [82 L.Ed.2d at p. 434], italics in original.)

"We hold that after retrial and conviction following a defendant's successful appeal, a sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings. 395 US, at 726, 23 L Ed 2d 656, 89 S Ct 2072. affirmed." (*Id.,* at pp. ——, fn. omitted [82 L.Ed.2d at pp. 435-436].)

The California cases construing this state's double jeopardy prohibition make no exception for postsentencing aggravating conduct. If California is to adopt a rule similar to *Wasman's*, we believe such direction must come from a court higher than this one. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

in the instant case had apparently presided over the prosecution at which defendant testified and commented on the record he was impressed with defendant's truthful testimony. Indeed, the judge stated, "If there is credit for testifying on behalf of Prosecution [*sic*], it would be my opinion, and my finding, that Mr. Foley should be entitled to it, and I would have no problems in giving him such credit, if in fact I had that credit to give." Nonetheless, the court opined that any reduction in defendant's term was an administrative matter for the Department of Corrections over which the trial court had no control. A supplemental probation report could inform the court whether defendant has received an administrative reduction in his term and, if not, whether the court might wish, in its discretion, to consider defendant's truthful testimony as a circumstance in mitigation on resentencing.

We shall therefore remand to the trial court for resentencing following preparation of a supplemental probation report. In light of this disposition, we need not consider defendant's contention the trial court failed to state appropriate reasons for its sentence choice.

## II

Defendant next contends full-term consecutive sentences were unlawfully imposed under subdivision (c) of section 667.6 (all nondescript references to subd. (c) are to this statute). With respect to the charges of violation of subdivision (2) of section 261 and subdivision (c) of section 286, the jury was instructed it had to find "that such act was committed by means of force, violence, menace or *fear of immediate and unlawful bodily injury* to [the victim]." Defendant argues the prosecution was required to plead and prove to the jury that *both* the rape and sodomy offenses were committed "by threat of great bodily harm" and the jury was required to so find. He asserts that since threat of "great bodily harm" was neither pled nor proved to the jury, nor found by them, the trial court could not invoke subdivision (c) to impose full-term consecutive sentences. Some statutory history will explain how defendant's contention arises and why we conclude the trial court has discretion to impose a full-term consecutive sentence for the rape offense upon remand.[7]

Since taking effect on January 1, 1980 (Stats. 1979, ch. 944, § 10, p. 3258), subdivision (c) has provided in pertinent part as follows: "In lieu

---

[7]As we have noted, at defendant's original sentencing, the trial court clearly made the term for rape the principal term and ran the term for sodomy consecutive to it. Although not entirely clear, it appears that at defendant's resentencing the court switched the order of terms and ran the rape consecutive to the sodomy. (See fn. 2, *ante*.) As we shall see, the order of terms is crucial to whether a full-term consecutive sentence can be lawfully imposed under subdivision (c).

of the term provided in Section 1170.1, a full, separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of Section 261, Section 264.1, subdivision (b) of Section 288, Section 289, or of committing sodomy or oral copulation in violation of Section 286 or 288a by force, violence, duress, menace or *threat of great bodily harm* whether or not the crimes were committed during a single transaction."[8] (Italics added.)

For reasons that will appear, we examine the offenses described in subdivision (c) as of January 1, 1980, when subdivision (c) became effective. Subdivision (2) of section 261 then defined rape as an act of sexual intercourse, accomplished with a person not the spouse of the perpetrator, where a person resists, but the person's resistance is overcome by force or violence. (Stats. 1979, ch. 994, § 1, p. 3383.) Subdivision (3) of section 261 defined rape as the same kind of act of sexual intercourse where a person is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution, or by any intoxicating, narcotic, or anesthetic substance, administered by or with the privity of the accused. (*Ibid.*) Section 264.1 defined rape in concert in pertinent part as "any case in which defendant, voluntarily acting in concert with another person, by force or violence and against the will of the victim, committed the rape . . . ." (Stats. 1978, ch. 579, § 15, p. 1983.) Subdivision (b) of section 288 defined a lewd act by force, etc. as an act committed "by use of force, violence, duress, menace, or threat of great bodily harm, and against the will of the victim . . . ." (Stats. 1979, ch. 944, § 6.5, p. 3254.) Section 289 then provided in pertinent part, "Every person who causes the penetration, however slight, of the genital or anal openings of another person, by any foreign object, substance, instrument, or device, by use of force, violence, duress, menace, or threat of great bodily harm, and against the will of the victim, for the purpose of sexual arousal, gratification, or abuse, shall be punished by imprisonment in the state prison . . . ." (Stats. 1978, ch. 1313, § 1, p. 4300.)

The foregoing statutes shared an obvious unifying principle: they all penalized sexual acts accomplished against the victim's will, usually by force. This unifying principle clarifies the remainder of subdivision (c).

Subdivision (c) also applies to a defendant committing sodomy or oral copulation "in violation of Section 286 or 288a by force, violence, duress,

---

[8]The remainder of subdivision (c) provides: "If such term is imposed consecutively pursuant to this subdivision, it shall be served consecutively to any other term of imprisonment, and shall commence from the time such person would otherwise have been released from imprisonment. Such term shall not be included in any determination pursuant to Section 1170.1. Any other term imposed subsequent to such term shall not be merged therein but shall commence at the time such person would otherwise have been released from prison."

menace or threat of great bodily harm . . . ." As of the effective date of subdivision (c), section 286, subdivision (c) provided in pertinent part, "Any person who participates in an act of sodomy with another person who is under 14 years of age and more than 10 years younger than he, or who has compelled the participation of another person in an act of sodomy by force, violence, duress, menace, or threat of great bodily harm, shall be [subject to greater punishment]." (Stats. 1979, ch. 944, § 6, p. 3253.) Section 288a, subdivision (c) also specified greater penalties for oral copulation committed in identical circumstances, i.e., where a participant was under age 14 and more than 10 years younger than the defendant or where participation in the act was compelled by force, etc. (*Id.*, at § 7, p. 3254.)

The meaning of the clause "by force, violence, duress, menace, or threat of great bodily harm" in subdivision (c) as originally enacted thus becomes clear. We believe that, in keeping with the unifying principle discussed above, the original statutory scheme gave trial courts discretion to impose full-term consecutive sentences for certain sex crimes accomplished by coercion and against the victim's will. Most of such crimes (i.e., §§ 261, subds. (2) and (3), 264.1, 288, subd. (b) and 289) could be identified simply by numerical and alphabetical reference to their definitional statutes, including their subdivisions. However, that method of classification was inutile where violations of section 286, subdivision (c) or 288a, subdivision (c) were at issue, because those subdivisions painted with too broad a brush. They predicated criminality not exclusively upon coercive conduct but also upon an age differential between perpetrator and victim. The fact that sexual acts are undertaken with a minor under age 14 does not necessarily imply the acts have been coerced. (See *People* v. *Cicero* (1984) 157 Cal.App.3d 465, 483 [204 Cal.Rptr. 582].) Consequently, the subject clause—"by force, violence, duress, menace, or threat of great bodily harm"—was apparently necessary to limit the application of subdivision (c) to violations of section 286, subdivision (c) and 288a, subdivision (c) based on force and not age differential. ■ This conclusion is also in accord with the general rule that, unless context or evident meaning require a different construction, a qualifying clause is ordinarily to be applied to the words or phrases immediately preceding it and not to others more remote. (See *White* v. *County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191]; *People* v. *Corey* (1978) 21 Cal.3d 738, 742 [147 Cal.Rptr. 639, 581 P.2d 644]; *People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250].)

Although, as we have seen, sections 286 and 288a include conduct by force and conduct based upon age differential within the same subdivision of each statute, since 1980, when section 667.6 was first effective, forcible conduct, on the one hand, and age differential, on the other, have been

treated as different crimes for purposes of findings by the jury. Thus, oral copulation by force or fear has been defined by CALJIC No. 10.40 (1976 rev.) and later by CALJIC No. 10.40.2 (1981 rev.) while oral copulation involving an age differential between perpetrator and victim has been defined by CALJIC No. 10.41 (1976 rev.). The latter instruction tells the jury to make a special finding on the age difference in its verdict. A similar instructional pattern has existed for sodomy based on force (see CALJIC No. 10.50 (1976 & 1981 rev.) and on an age difference (see CALJIC No. 10.51 (1976 rev.)).

■ From the foregoing, we conclude that, as originally enacted, subdivision (c) permitted the trial court to exercise the statute's sentencing discretion when the defendant had been convicted of any of the discrete crimes specified in the statute.[9]

In *People* v. *Stought* (1981) 115 Cal.App.3d 740 [171 Cal.Rptr. 501], this court also concluded subdivision (c) referred to discrete crimes, although at the time the question presented did not require an elaboration of our reasons. There, defendant, who was convicted of, inter alia, forcible oral copulation (§ 288a, subd. (c)), contended he was unlawfully sentenced to a consecutive sentence under subdivision (c) because the facts necessary to trigger the statute had not been pleaded or proved at trial. (P. 742.) This court rejected defendant's contention for the following reasons: "A 'full, separate and consecutive' term is an option available to the trial court when a sex crime enumerated in subdivisions (c) and (d) has been committed. There is nothing to plead and prove as an additional ingredient of such an offense. An 'enhancement' results in a penalty additional to that normally imposed for the charged offense, based on proof of additional facts. The consecutive sentence permitted by Penal Code section 667.6, subdivision (c), is based on the crime for which convicted; no additional factual finding incidental to another charge is necessary." (*Id.,* at pp. 742-743.) Other courts have followed *Stought*'s holding. (See *People* v. *Price* (1984) 151 Cal.App.3d 803, 820-821 [199 Cal.Rptr. 99]; *People* v. *Masten* (1982) 137 Cal.App.3d 579, 591 [187 Cal.Rptr. 515].)

---

[9]The Pacific Law Journal, in its *Review of Selected 1979 California Legislation,* also thought subdivision (c) applied to discrete offenses: "The offenses involved are: (1) rape by force or violence, by threat of great bodily harm, or by the use of narcotics or anesthetics; (2) rape by force or violence while acting in concert with another; (3) lewd and lascivious acts with a child under 14 by means of force, threat, violence, duress, menace, or threat of great bodily harm; (4) sexual assault with a foreign object; or (5) sodomy or oral copulation by force, violence, duress, menace, or threat of great bodily harm." (11 Pacific L.J. 259, 431, fn. omitted.)

Although not expressly addressing the issue, our Supreme Court, in *People* v. *Belmontes, supra,* consistently referred to "the sex offenses" set forth in subdivision (c), an unmistakable allusion to discrete crimes. (34 Cal.3d at pp. 345-346.)

Implicit in *Stought*'s conclusion is the assumption the Legislature intended that the facts necessary to invoke subdivision (c) would be pleaded, proved, and found by the trier of fact beyond a reasonable doubt, since a defendant could not be convicted of one of the requisite crimes unless those procedures were followed.

During its honeymoon year—1980—subdivision (c) and its constituent offenses operated, from all appearances, in perfect harmony. However the honeymoon was soon to end. During 1980, the Legislature amended sections 286 and 288a to replace "threat of great bodily harm" with "fear of immediate and unlawful bodily injury." (Stats. 1980, ch. 915, §§ 1, 2, pp. 2912-2913.) Section 667.6 was not correspondingly amended. It continued to refer, in both subdivisions (c) and (d), to violations of sections 286 or 288a committed "by threat of *great* bodily harm." ■ "*Great* bodily harm" is not the same as "unlawful bodily injury;" the former implies a greater degree of bodily harm. (See *People* v. *Caudillo* (1978) 21 Cal.3d 562, 586-587 [146 Cal.Rptr. 859, 580 P.2d 274]; *People* v. *Holt* (1985) 163 Cal.App.3d 727, 732-734 [209 Cal.Rptr. 643].) Consequently, the 1980 amendments injected considerable disharmony in the relationship between section 667.6 and two of its constituent crimes. Indeed, while section 667.6 continued on with its baggage of "great bodily harm," sections 286 and 288a with their cargo of "unlawful bodily injury," suddenly found themselves on a different track altogether. Because of the 1980 amendments, a conviction of violation of section 286 or section 288a no longer necessarily implies a finding by the jury of great bodily harm. The amendments therefore served partially to undermine the rationale of *People* v. *Stought, supra.*

In *People* v. *Reyes* (1984) 153 Cal.App.3d 803 [200 Cal.Rptr. 651], the Fifth District Court of Appeal confronted the problem created by the divergence of statutory language discussed above. There, the trial court had imposed full consecutive sentences for convictions of section 286, subdivision (c) and section 288a, subdivision (c) pursuant to subdivision (d) of section 667.6, which *mandates* full consecutive terms for the specified crimes where they are committed by "threat of great bodily harm" in prescribed circumstances. As in the instant case, the *Reyes* jury had been instructed in the language of the statutory crimes after the 1980 amendments but not in the language of section 667.6, nor was the jury required to make a finding under the latter statute. (*Reyes, supra,* 153 Cal.App.3d at pp. 812-813.) Without analysis, the *Reyes* court asserted, "For the full consecutive terms to be imposed for these serious sex offenses, the record must reflect with certainty that the jury verdict satisfied the requirements of section 667.6, subdivision (d)." (*Id.,* at pp. 811-812.) The *Reyes* court opined the jury's verdict of conviction did not imply a finding that the crimes were committed by

"threat of great bodily harm," so that the consecutive terms had been unlawfully imposed. (*Id.,* at p. 813.)

In reliance on *Reyes,* defendant contends his consecutive sentences were unlawfully imposed in that he was denied his right to a trial by jury on the veracity of the facts used by the trial judge to impose consecutive sentences. We turn first to defendant's conviction for sodomy by force (§ 286, subd. (c)).

The Attorney General argues the sodomy conviction can be used under subdivision (c) because the trial judge, on remand for resentencing, expressly found on the record that defendant's sex crimes had been committed by threat of great bodily harm. This argument assumes that by its 1980 amendments to sections 286 and 288a, and by its failure or refusal to amend section 667.6, the Legislature intended to transfer an important fact-finding function from jury to judge. The argument assumes further that the Legislature intended to eliminate the pleading and proof requirements inherent in the statutory scheme as originally enacted, when subdivision (c) was clearly triggered only by convictions for offenses following all the customary due process of a criminal trial.

Were we dealing with a procedural change of lesser moment, we might give the argument greater credence. However, serious constitutional questions of due process of law are raised where a defendant is given a greatly enhanced sentence[10] based upon facts found exclusively by the sentencing judge and not by a jury. (See *Specht* v. *Patterson* (1967) 386 U.S. 605 [18 L.Ed.2d 326, 87 S.Ct. 1209]; *People* v. *Burnick* (1975) 14 Cal.3d 306 [121 Cal.Rptr. 488, 535 P.2d 352]; *People* v. *Colvin* (1981) 114 Cal.App.3d 614 [171 Cal.Rptr. 32]; *United States* v. *Duardi* (W.D.Mo. 1974) 384 F.Supp. 874, 885-886, affd. on other grounds 529 F.2d 123 (8th Cir. 1975); compare *Williams* v. *New York* (1949) 337 U.S. 241 [93 L.Ed. 1337, 69 S.Ct. 1079]; *People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220, 3 A.L.R.4th 1171]; *People* v. *Betterton* (1979) 93 Cal.App.3d 406 [155 Cal.Rptr. 537]; *People* v. *Nelson* (1978) 85 Cal.App.3d 99 [149 Cal.Rptr. 177]; *United States* v. *Davis* (3d Cir. 1983) 710 F.2d 104, 106, cert. den. 464 U.S. 1001 [78 L.Ed.2d 695, 104 S.Ct. 505], and authorities cited therein; see generally Note, *The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals* (1975) 89 Harv.L.Rev. 356; Note, *Procedural Due Process at Judicial Sentencing for Felony* (1968) 81 Harv.L.Rev. 821; Uelmen,

---

[10]In the instant case, had defendant been sentenced under section 1170.1, his consecutive term for rape would have been one-third of the middle term, or two years. (§ 1170.1, subd. (a).) Under subdivision (c) of section 667.6, his consecutive term was six years, or four years greater than a section 1170.1 term.

*Proof of Aggravation Under the California Uniform Determinate Sentencing Act: The Constitutional Issues* (1977) 10 Loyola L.A. L.Rev. 725.)

Jurisdictions that have delegated authority to sentencing judges to find facts resulting in substantially increased terms have generally done so by enacting carefully tailored legislation providing explicit due process protections such as notice, hearing, and cross-examination. (See Note, *The Constitutionality of Statutes Permitting Increased Sentences for Habitual or Dangerous Criminals, op. cit. supra,* 89 Harv. L.Rev. at pp. 356-359; see also 18 U.S.C. § 3575; 21 U.S.C. § 849; *United States* v. *Vigil* (10th Cir. 1984) 743 F.2d 751, 757-760, cert. den. — U.S. — [83 L.Ed.2d 709, 105 S.Ct. 600]; *United States* v. *Davis, supra,* 710 F.2d 104; *United States* v. *Darby* (11th Cir. 1984) 744 F.2d 1508, cert. den. *sub nom. Yamanis* v. *United States* (1985) — U.S. — [85 L.Ed.2d 841, 105 S.Ct. 2322, 105 S.Ct. 2323].)

We cannot believe the Legislature intended to disturb this constitutionally fragile tundra of law in the clandestine manner presented by this record, to wit, by amendment of the definitional provisions of section 286 and 288a and by concurrent failure to amend section 667.6. This legislative history presents "too thin a reed to support such a massive doctrinal transformation." (*People* v. *Horn* (1984) 158 Cal.App.3d 1014, 1032 [205 Cal.Rptr. 119].) A far more plausible explanation is the Legislature simply overlooked section 667.6 when it amended sections 286 and 288a in 1980.

 We realize, of course, it cannot be presumed that the Legislature indulged in idle acts. (*Stafford* v. *Realty Bond Service Corp.* (1952) 39 Cal.2d 797, 805 [249 P.2d 241].) Furthermore (appearances notwithstanding), we must assume the Legislature had section 667.6 in mind when it amended sections 286 and 288a. (See *People* v. *Belmontes, supra,* 34 Cal.3d at p. 347; *Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].) We will therefore give meaning to the Legislature's failure or refusal to amend section 667.6 since 1980. In doing so, however, we will not attribute more significance to this out-of-sync statutory scheme than it fairly deserves. Rather, we will abide by the settled rule requiring us to adopt an interpretation that, consistent with the statutory language and purpose, eliminates doubts as to the provision's constitutionality. (*People* v. *Davis* (1981) 29 Cal.3d 814, 829 [176 Cal.Rptr. 521, 633 P.2d 186]; *In re Kay* (1970) 1 Cal.3d 930, 942 [83 Cal.Rptr. 686, 464 P.2d 142]; see *People* v. *Yates* (1983) 34 Cal.3d 644, 653 [194 Cal.Rptr. 765, 669 P.2d 1].)

 We therefore conclude that, in light of the 1980 amendments to sections 286 and 288a, a defendant cannot be subject to discretionary full-

term consecutive sentencing under subdivision (c) unless he has committed a violation of section 286 or 288a "by force, violence, duress, menace, or threat of *great bodily harm.*" (Italics added.) At the same time, the 1980 amendments did not change section 667.6's implicit requirement that matters specified in subdivision (c), and necessary to trigger discretionary full-term consecutive sentencing, should be pled, proved, and found by the jury beyond a reasonable doubt. We therefore agree with *People* v. *Reyes, supra,* that, "The jury should be instructed to state unequivocally which of the alternative elements of section 286, subdivision (c), or section 288a, subdivision (c) it finds the defendant to have committed. The jury should further be instructed that if it makes a finding of use of threat or fear, it must additionally determine whether the degree of threat or fear was of great bodily harm, or only immediate and unlawful bodily injury." (153 Cal.App.3d at p. 813.)

 Defendant contends the jury was required to make the specified finding on the rape count as well as on the sodomy count, so that a full term cannot be imposed for the rape under subdivision (c). We must disagree with this view. The error at issue was the failure of the jury to find "threat of great bodily harm" as required by the specified clause of subdivision (c). As we have noted, that clause applied only to sections 286 and 288a. It did not apply to subdivision (2) of section 261, a discrete crime.[11] No further finding by the jury was necessary to include defendant's conviction for rape within subdivision (c).

 This conclusion tenders the further question whether the discretion provided by subdivision (c) is properly exercised where a defendant has been convicted of multiple offenses, only one of which is a forcible sex crime specified in subdivision (c). Both the Fourth and Fifth District Courts of Appeal have concluded in the affirmative, each decision by a divided panel. (See *People* v. *Jamison* (1984) 150 Cal.App.3d 1167 [198 Cal.Rptr. 407]; *People* v. *Howell* (1984) 151 Cal.App.3d 824 [199 Cal.Rptr. 110].) We believe Justice Andreen correctly analyzed the issue in *Howell* and agree

---

[11]As we have noted, when subdivision (c) was enacted, subdivision (2) of section 261 then defined rape as an act of sexual intercourse, accomplished with a person not the spouse of the perpetrator, where a person resists, but the person's resistance is overcome by force or violence. (Stats. 1979, ch. 994, § 1, p. 3383.) In 1980, subdivision 2 of section 261 was amended, so that, at the time of defendant's crimes, it defined rape as an act of sexual intercourse accomplished with a person not the wife of the perpetrator and "against a person's will by means of force or fear of immediate and unlawful bodily injury on the person of another." (Stats. 1980, ch. 587, § 1, p. 1595; see *People* v. *Salazar* (1983) 144 Cal.App.3d 799, 806-807 [193 Cal.Rptr. 1].) The 1980 amendment deleted requirements that the victim resist and that such resistance had to be overcome by force or violence. We perceive no intent in this amendment to change the then-existing statutory scheme whereby a conviction of subdivision (2) of section 261, without further findings, was sufficient to include the offense within subdivision (c).

with his conclusion that "in appropriate circumstances, section 667.6, subdivision (c) is a sentencing option available to courts when the defendant has committed multiple offenses, a single one of which is a violation of a sex offense (listed in § 667.6, subd. (c))." (*Howell, supra,* 151 Cal.App.3d at p. 829.)

 Since defendant was convicted of multiple offenses, and one (§ 261, subd. (2)) was a forcible sex crime specified in subdivision (c), the trial court upon remand can properly exercise its discretion to impose a full-term consecutive sentence for violation of the specified forcible sex crime. (*Ibid.*)

### DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated and the matter is remanded for resentencing in accordance with the views set forth herein.

Evans, Acting P. J., and Blease, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 14, 1985. Reynoso, J., was of the opinion that the petition should be granted.