Filed 5/14/13  P. v. Woods CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yuba)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>PARIS LORENZO WOODS,<br><br>        Defendant and Appellant. | C071103<br><br>(Super. Ct. No. CRF11541) |

After pleading no contest to one charge of second degree robbery, defendant Paris Lorenzo Woods was sentenced to the upper term of five years in prison.  On appeal, defendant contends the trial court abused its discretion by imposing the upper-term sentence because:  (1) his punishment was significantly harsher than the penalty imposed on one of his crime partners; (2) the court improperly considered his jailhouse behavior as an aggravating factor; and (3) the court gave only minimal consideration to mitigating factors.  We conclude that defendant forfeited these arguments by failing to object to the judgment after pronouncement.  Nevertheless, we address the merits of these arguments through the lens of ineffective assistance of counsel and conclude that imposing the upper-term sentence was not an abuse of discretion and therefore defense counsel's

1

forfeiture of these arguments did not constitute ineffective assistance of counsel. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Early one morning in the fall of 2011, defendant, along with several copartners in crime, stole marijuana from a medical marijuana garden located at a private residence. While the parties were in the process of stealing the marijuana, the owner of the home, Francisco, was alerted to the commotion and went to investigate. When he did so, he saw two men standing by his marijuana plants; one of the men yelled, " 'Get back in your house, mother fucker.' " Three gunshots followed. Francisco ran back inside his home and told his wife, Cynthia, to get their 10-year-old son out of the master bedroom. While doing so, Cynthia heard two more gunshots and the sliding glass door in the master bedroom shattered. After the gunfire ceased, Cynthia called 911. Francisco returned to the backyard in time to see approximately eight males running toward three different vehicles.

Defendant waited by the vehicles outside of the victim's yard during the commission of the crime and then helped load a tarp full of marijuana into the back of one of the getaway vehicles. Defendant next attempted to flee the premises, but found his car would not start. Following the lead of others, defendant left the vehicle and took off on foot.

Denia Douglas, the driver of one of the other getaway vehicles, was stopped and detained for questioning soon thereafter by Yuba County sheriff's deputies. Defendant and one of the others involved in the robbery, Joshua Johnson, were also detained by deputies when they were found walking north on Highway 70 -- wearing black clothing and smelling of marijuana. When the deputies interviewed these three detainees, Douglas and Johnson each gave incriminating statements about themselves and defendant. Defendant, however, denied any involvement in the incident -- instead claiming that he

2

and Johnson were visiting girls in Sacramento, took a wrong turn on their way back to Fairfield, then ran out of gas and began walking.

Two days later, defendant was charged with discharging a firearm at an inhabited dwelling, second degree robbery, and assault with a firearm. Defendant pled no contest to second degree robbery in exchange for the prosecutor's agreement to drop all other charges. At the plea hearing, the court informed defendant that it could impose a sentence of either two, three, or five years for second degree robbery. Defendant said that he understood the offer and accepted it.

At the sentencing hearing, defense counsel advocated for probation based on defendant's minor role in the crime, his insignificant criminal record, and his successful completion of juvenile probation. Defense counsel argued that, "at the very worst this would be a low-term case . . . ."

The prosecution argued for the maximum sentence of five years based on the violent nature of the crime, defendant's lack of cooperation with law enforcement, and his misbehavior in jail. In addition, the victim, Cynthia, testified as to how the robbery traumatized her and her family and caused significant, long-lasting emotional impacts.

In response to these arguments, the court stated, "I'm denying probation in this matter because it's not the acceptable result for this crime. The defendant has had no remorse. He is a danger to society. And I have no reason to believe that he could be released to the public and not generate further crimes."

Regarding the proper sentence to impose, the court said the following: "Now I'm looking at the choice here; two, three or five. And I can consider that -- when imposing the term of imprisonment prescribed by law, what does the defendant have in his criminal past. I'm looking at the letters that his family writes saying that he's a nice person to them. Although the victim says he sure wasn't nice. He has a juvenile record. Solano County, misdemeanor, a misdemeanor. A misdemeanor disturbing the peace; misdemeanor battery in '06. He's had his probation violated and reinstated and

3

terminated successfully. That went in his favor. Lack of record somewhat weighs in his favor. He wasn't on parole or probation when this crime was committed. That weighs in his favor. But I'm seeing a lack of remorse. And I can understand Probation's position that -- and I'm finding -- the crime involved great violence. There are many types of robberies, but this crime involved great violence. A great threat of bodily harm. The people in the house could have been killed. There is a high degree of cruelty, viciousness and callousness in the execution of this crime. The victims are particularly vulnerable. As [Cynthia] stated, they [we]re asleep in their home when they [we]re intruded upon by multiple armed assailants who [struck] with gunfire. I'm finding also that the matter was planned, sophisticated and professional in the way it was carried out. The defendant wasn't coming up here to meet girls. [Defendant] just wasn't sitting in the back seat [*sic*] snoozing. He was out there committing this crime, and he's lied to me.

"There's a high degree of monetary loss; over $10,000 in this case. This is violent conduct showing that the defendant is a danger to society and also considering the fact that he can't seem to conduct himself appropriately in the Yuba County Jail. If he's going to conduct himself in such a fashion dealing with other prisoners and displaying disrespect to the staff who is trying to supervise him, that doesn't tell me he could be very good released back into society.[1]

---

**1** The jailhouse misbehavior referred to here is based on the following four disciplinary incidents:

"On October 14, 2011, [defendant] and co-defendant Johnson continually were disrespectful towards Yuba County Jail Commissary staff person Charlotte. [Defendant] and Johnson were heard . . . yell[ing] 'Bitch' towards Charlotte. Charlotte advised the inmates their attitude and was [*sic*] unacceptable. [Defendant] and Johnson interrupted her while she was giving the advisement by calling her a bitch. [Defendant] was the main instigator.

4

"Looking at the overall job a judge has, my choice of two, three or five years, two is not acceptable in this case. It's not long enough for what's been done here. It's unacceptable to me. It is my intent to sentence [defendant] to the longest term possible because I think that even five years is insufficient for the crime that these folks have suffered. Just sitting there in their own house, minding their own business, their home is shot up. Their property was taken. They're viciously attacked. They still suffer the consequences today of what the defendant and his friends did. The defendant is absolutely unapologetic and unremorseful for this crime. That is what threw me over the top to five years. Very violent crime. These folks [we]re armed. This [wa]s well planned out. People could have been killed. And the defendant never fessed up to what he did. He's lying still.

"So I'm selecting the upper term of five years in state prison for this matter. I'm denying probation. . . . .

"The circumstances in mitigation are insignificant compared to the aggravated fashion in which this crime was committed."

Following the pronouncement of sentence, defense counsel did not make any objections. Defendant filed a timely appeal.

---

"On January 21, 2012, [defendant] entered into a cell that was being cleaned without permission and jumped onto the top bunk of the unoccupied cell.

"On February 28, 2012, [defendant] was returning from having a visit. Inmate Robinson pushed [defendant] into the sally port area. A physical altercation ensued and deputies intervened. Robinson was observed striking [defendant] with a fist to the face, while [defendant] was in a 'headlock' position. [Defendant] told deputies 'Robinson and other crip gang members were forcing their politics on the blacks and that he was tired of it, so he was assaulted for not following politics.' [Defendant] was placed into an alternate pod for his safety.

"On March 6, 2012, [defendant] failed to make his bed per Yuba County Jail rules. [Defendant] was directed to make his bed. [Defendant] complied with the deputy."

5

DISCUSSION

We are faced with two issues on appeal:  first, did defendant forfeit his right to challenge the court's imposition of the upper-term sentence by failing to object to the sentence after pronouncement, and second, if so, did such forfeiture constitute ineffective assistance of counsel?  We answer the first question in the affirmative, and the second in the negative.

I

*Defendant Forfeited His Right To Challenge The Upper-Term Sentence*

The People contend defendant is precluded from challenging imposition of the upper term because defense counsel failed to object to its imposition after the judgment was pronounced.  While acknowledging that "his counsel did not specifically object to some of the factors relied on by the court which are now being challenged[,]" defendant nevertheless claims that by advocating for probation, or alternatively, the lower term sentence, his counsel impliedly objected to the upper-term sentence and preserved the issue for appeal.  Defendant is wrong.

In *People v. Scott* (1994) 9 Cal.4th 331, our Supreme Court held that lack of a timely and meaningful objection to a sentencing decision may forfeit a party's claim of error on appeal.  The court in *Scott* explained that this forfeiture rule extends all the way to "claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices.  Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons."  (*Id.* at p. 353.)  Defendant's challenges to the sentence imposed fall squarely within this category.

It was not enough for defense counsel to request probation, or alternatively, the lower term sentence.  (See *People v. de Soto* (1997) 54 Cal.App.4th 1, 9-10 ["The reason

6

for the rule is obvious; there can be no objection before the court makes the necessary sentencing choices"].) "[C]ounsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention." (*People v. Scott*, *supra*, 9 Cal.4th at p. 353.) Therefore, if defendant wished to preserve for appeal the specific sentencing issues he raises here, his trial counsel needed to specifically and timely object to the imposition of the upper-term sentence *after* it was pronounced. (See *de Soto*, at pp. 9-10.) Thus, defendant's challenges to the upper-term sentence were forfeited.

II

*Failure To Object To Imposition Of The Upper-Term Sentence*

*Did Not Constitute Ineffective Assistance Of Counsel*

In the alternative, defendant claims that if his challenges to the imposition of the upper-term sentence were forfeited, this forfeiture constituted ineffective assistance of counsel and therefore we should address the underlying merits of the claims anyway.

A claim of ineffective assistance of counsel has two components: " 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' [Citation.]

"To establish ineffectiveness, a 'defendant must show that counsel's representation fell below an objective standard of reasonableness.' [Citation.] To establish prejudice he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

7

outcome.' " (*Williams v. Taylor* (2000) 529 U.S. 362, 390-391 [146 L.Ed.2d 389, 416], quoting *Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 698]; *In re Jones* (1996) 13 Cal.4th 552, 561.) We must address the underlying merits of defendant's arguments to determine if counsel was ineffective in failing to preserve these issues for appeal. (See *People v. Burgener* (2003) 29 Cal.4th 833, 887.)

We keep in mind that, if defendant's claims were preserved for appeal, the standard of review facing these claims would have been abuse of discretion. (See *People v. Bradford* (1976) 17 Cal.3d 8, 20 [on appeal, a sentencing order will be upheld unless there is a clear showing of abuse].) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

Starting with the first prong of ineffective assistance of counsel -- deficiency -- defendant has the burden of proving that, with the above understanding of abuse of discretion in mind, it was unreasonable (see *People v. Lucas* (1995) 12 Cal.4th 415, 436) for defense counsel not to object to the court's imposition of the upper-term sentence on at least one of the following grounds: (1) The court improperly imposed a harsher penalty on defendant than was imposed on one of his crime partners who also pled no contest to the same offense; (2) The court improperly considered defendant's jailhouse

8

behavior as an aggravating factor; or (3) The court did not adequately consider the circumstances in mitigation.

We will not consider defense counsel ineffective for failing to object to the upper-term sentence on the above stated grounds if making such objections clearly would have been futile. (See *People v. Diaz* (1992) 3 Cal.4th 495, 562 [no claim for ineffective assistance of counsel based on defense counsel's failure to make a futile objection].)

*A*

*Imposing A Harsher Penalty On Defendant Than*

*Was Imposed On One Of Defendant's Crime Partners*

Defendant argues that the trial court clearly abused its discretion by imposing a five-year sentence on him when Douglas, one of his crime partners charged with the same offense, "was placed on probation for five years and [was] only required to serve four months in the county jail." Defendant cites no authority to support his proposition that this type of variation in sentencing among crime partners evidences abuse of discretion by the court. In fact, case law is to the contrary: "Evidence of the disposition of a codefendant's case . . . is not relevant to the decision at the penalty phase, which is based on the character and record of the *individual* defendant and the circumstances of the offense." (*People v. Mincey* (1992) 2 Cal.4th 408, 476; see also 22A Cal.Jur.3d § 366 ["The trial court's sentencing discretion under the determinate sentencing law must be exercised in a manner . . . that is based upon an *individualized* consideration of the offense, the offender, and the public interest," italics added].)

While we recognize that some of the aggravating factors the court considered in determining defendant's sentence were related to the nature of the crime committed -- and that these factors must have been the same for Douglas and defendant -- there were also individual factors the court considered that differentiated defendant's sentencing determination from Douglas's. For example, at defendant's sentencing hearing, the court noted that defendant had not been "conduct[ing] himself appropriately in the Yuba

9

County Jail" and that "[if] he's going to conduct himself in such a fashion dealing with other prisoners and displaying disrespect to the staff who is trying to supervise him, that doesn't tell me he could be very good released back into society."[2] In addition, the court noted that defendant had a juvenile record, that "defendant never fessed up to what he did[,]" was "lying still[,]" and "[wa]s absolutely unapologetic and unremorseful for this crime."

As the People argued at trial, "[Douglas] is remarkably dissimilar from [defendant]. [Douglas] cooperated with law enforcement from the moment she was contacted by them. She took them to the location. She explained everything that occurred from the moment they left Fairfield. She cooperated with law enforcement in any and every way that law enforcement asked her to. And she had absolutely no prior criminal record, juvenile or otherwise." These notable differences between defendant and Douglas, tied to the requirement that courts make individualized sentencing determinations (see *People v. Sandoval* (2007) 41 Cal.4th 825, 847), go to show that it was clearly within the discretion of the court to impose a harsher sentence on defendant than the sentence received by Douglas.

Therefore, because it was clearly not an abuse of discretion for the court to sentence defendant to a higher term than Douglas received, it was accordingly not unreasonable for defense counsel to forfeit this claim by failing to object to the upper-term sentence on this ground. Such an omission did not constitute ineffective assistance

---

**2**     We are aware that one of defendant's claims on appeal is that it was improper for the judge to consider his jailhouse behavior when making the sentencing determination. If that were indeed the case, it would be improper for us to consider this as an individualized factor for defendant's higher sentence term. However, as will be discussed in Section IIB of this opinion, it was not improper for the judge to consider defendant's postconviction behavior when determining what sentence to impose. Therefore, it is also proper to include this factor in our analysis at this point.

of counsel.  (See *People v. Thompson* (2010) 49 Cal.4th 79, 122 ["Counsel is not ineffective for failing to make frivolous or futile motions"].)

*B*

*Defendant's Jailhouse Behavior As An Aggravating Factor*

Defendant argues that the trial court improperly considered his postarrest, jailhouse behavior when determining what sentence term to impose.  Specifically, citing subdivisions (a) and (b) of rule 4.421 of the California Rules of Court, defendant argues that his "post-crime behavior in jail was not a factor related to the crime.  [Citation.]  Moreover, it was not behavior, such as poor performance on probation or parole, that would argue for an increased prison term."  While it is true that poor jailhouse behavior is not specifically listed as an aggravating factor in our rules of court, the rules also provide that "the sentencing judge may consider circumstances in aggravation or mitigation, *and any other factor reasonably related to the sentencing decision*."  (Cal. Rules of Court, rule 4.420(b), italics added.)  In addition, the rules declare that "[t]he enumeration in these rules of some criteria for the making of discretionary sentencing decisions *does not prohibit the application of additional criteria* reasonably related to the decision being made."  (Cal. Rules of Court, rule 4.408(a), italics added.)

Defendant's briefs conveniently omit any mention of the above quoted provisions and any analysis as to why his jailhouse behavior is not "reasonably related to the decision being made."  (Cal. Rules of Court, rule 4.408(a).)  On the other hand, the court at the sentencing hearing explained why defendant's jailhouse behavior was relevant to the sentencing determination when it stated that "[i]f he's going to conduct himself in such a fashion [in Yuba County Jail] . . . that doesn't tell me he could be very good released back into society."  This consideration of the societal impact of the sentencing decision comports with our Supreme Court's directive " 'that sentencing decisions must take into account "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." ' "  (*People v. Cheatham* (1979) 23 Cal.3d

11

829, 835.) Thus, the court's consideration of defendant's postarrest, jailhouse behavior was both relevant and proper in relation to the court's sentencing determination.

To the extent defendant might be arguing it is per se inappropriate to consider postconviction behavior for sentencing, this is inaccurate. In *People v. Foley*, (1985) 170 Cal.App.3d 1039, 1047, this court, considering whether postconviction behavior could be considered in a resentencing hearing, observed that Penal Code section 1170, subdivision (b), which lays out the guidelines for determinate sentencing, "provides in pertinent part that, in setting a term, 'the court may consider . . . other reports including reports received pursuant to Section 1203.03. . . .' [Citation.] Since a diagnostic evaluation pursuant to section 1203.03 is made in a prison setting and is appropriate only 'In any case in which a defendant is convicted of an offense punishable by imprisonment in the state prison,' the statute clearly contemplates that the sentencing judge be able to consider a defendant's postconviction behavior in prison in setting a term. [Citation.] If a defendant's postconviction behavior in prison is relevant to setting his term at his original sentencing, we can see no reason why it would not be relevant to the setting of his term upon resentencing."

Thus, as laid out above, because consideration of defendant's postarrest, jailhouse behavior was neither irrelevant nor per se inappropriate, it was undoubtedly within the discretion of the court whether to include this factor in the sentencing determination. Furthermore, because an objection to the upper-term sentence based on this consideration would clearly have been futile, the failure of defense counsel to make the objection does not establish ineffective assistance of counsel. (See *People v. Thompson*, *supra*, 49 Cal.4th at p. 122.)

## C

### *The Court's Consideration Of Mitigating Factors*

Lastly, defendant argues that "the five-year term must be vacated and the cause remanded" because "the circumstances in mitigation were given minimal consideration

by the court." The specific mitigating factors defendant is referring to are "the passive role [defendant] played in the commission of the robbery[,]" defendant's "almost non-existent" criminal history prior to the robbery, and the fact that defendant was not on probation at the time of the offense. In opposition to this argument, the People correctly point out that "the record clearly demonstrates that the trial court considered these factors before imposing the upper term."

"[T]he 'weighing' of aggravating against mitigating circumstances is not a mechanical or numerical process, but rather entails . . . determining the appropriate punishment based upon all relevant evidence." (*People v. Davenport* (1985) 41 Cal.3d 247, 280.) The court, in considering all relevant evidence in mitigation and aggravation at the sentencing hearing, specifically noted that defendant had only a juvenile record and that this "somewhat weighs in his favor." In addition, the court stated that defendant "wasn't on parole or probation when this crime was committed. That weighs in his favor." And at the beginning of the sentencing hearing, the court asked the parties to stipulate that it could consider the extent of defendant's involvement in the crime for sentencing purposes -- namely that he never entered the victims' yard during the commission of the robbery. Nevertheless, when weighed against the aggravating factors such as defendant's "lack of remorse"; that "this crime involved great violence. . . . [and] [a] great threat of bodily harm"; the "high degree of cruelty, viciousness and callousness in the execution of this crime"; the vulnerability of the victims who were "asleep in their home when they [we]re intruded upon by multiple armed assailants who str[uck] with gunfire"; the "plan[ning], sophisticat[ion] and professional[ism] in the way [the robbery] was carried out"; the "high degree of monetary loss; over $10,000 in this case"; and defendant's poor jailhouse behavior since the arrest, the court expressly found "[t]he circumstances in mitigation are insignificant compared to the aggravated fashion in which this crime was committed."

On appeal, this court is not in a position to tell the trial court how it should have weighed the mitigating and aggravating factors when making this sentencing determination; " 'it is the sentencer that decides how much weight to give to the . . . factors, and that decision is not amenable to appellate review.' " (*People v. Brown* (1988) 46 Cal.3d 432, 470.) Because the trial court did in fact recognize the mitigation factors in question and expressly included these factors in the sentencing decision, we cannot say that the weight attributed to these factors constituted an abuse of discretion. (See *People v. Evans* (1983) 141 Cal.App.3d 1019, 1022 ["A sentencing court has wide discretion in weighing the aggravating and mitigating factors [citations]. There was no abuse of that discretion here, as the record amply supports a finding the superior court considered all relevant factors and made a reasonable decision as to their relative weight"].)

As with the previous two challenges asserted against the sentencing determination, it is apparent that if defense counsel had made an objection on this ground, the objection would have been overruled. Thus, the actions of defense counsel in this instance did not rise to the level of deficiency. (See *People v. Thompson*, *supra*, 49 Cal.4th at p. 122.)

Because none of defense counsel's failures to object amount to deficiency under the first prong of the ineffective assistance of counsel test, it is unnecessary to address whether these omissions caused prejudice to defendant as required under the second prong of the test -- although, based on the above analysis, it is apparent that prejudice would not be found either.

DISPOSITION

The judgment is affirmed.

                                        \_\_\_\_\_ROBIE\_\_\_\_\_, Acting P. J.

We concur:

\_\_\_\_\_BUTZ\_\_\_\_\_, J.

\_\_\_\_\_MAURO\_\_\_\_\_, J.