[Crim. No. 11168.   Second Dist., Div. Four,   Mar. 25, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JACKIE EUGENE WARE, Defendant and Appellant.

144

Irving Davidson, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—This is a second appeal arising out of defendant's conviction of two counts of first degree robbery committed September 14, 1963, in violation of Penal Code section 211. Before sentencing defendant to state prison on January 29, 1964, the trial judge stated that he was "prohibited by the code" from granting probation. On defendant's appeal the District Court of Appeal for the Second Appellate District, Division Two, in an unpublished opinion, pointed out that the trial court had failed to make any finding that defendant had used or attempted to use a gun upon a human being, or any express finding that this was not an unusual case where the interest of justice demands a departure from the declared policy of the Legislature. The judgment was reversed and the case remanded to the trial court with directions to rearraign appellant for judgment, to hear and determine appellant's application for probation, "and thereafter to proceed in the premises as required by law." (*People* v. *Ware*, 2 CRIM 9828, decided Jan. 26, 1965.)

On April 22, 1965, defendant was brought back before the same judge who had sentenced him previously. The judge stated that he had read and considered the probation report which had been filed prior to the first judgment, and he had read the opinion of the appellate court.

Being thoroughly familiar with the facts of the case, since he had presided at the trial, the court then declared that he found that the defendant had used and attempted to use a gun

upon a human being in the perpetration of the crime in question, and that this is not an unusual case where the interest of justice demands a departure from the general policy.

The court then adjudged that defendant be imprisoned in the state prison for the term prescribed by law on each count, the sentences to run concurrently with each other.

The record of the trial amply supports these findings. This was the simplest case of arme'd robbery. There was evidence that defendant, carrying a sawed-off shotgun, and three armed companions entered a bowling alley and ordered the persons present to lie on the floor. The sum of $4.00 was taken from the pocket of one man and about $1,300 from the owner of the business. Defendant said to another man ''Give me your wallet,'' and when that man refused, defendant pointed his gun and respon'ded, ''Well, I can blow your brains out.'' No shots were fired. One victim was struck in the back of the head by a gun, causing a headache but no laceration.

Penal Code section 1203, since it was amended in 1957, contains this language: ''The Legislature hereby expresses the policy of the people of the State of California to be that, except in unusual cases where the interest of justice demands a departure from the declared policy, no judge shall grant probation to any person who shall have been convicted of robbery, burglary or arson, an'd who at the time of the perpetration of said crime or any of them or at the time of his arrest was himself armed with a deadly weapon (unless at the time he had a lawful right to carry the same), nor to a defendant who used or attempted to use a deadly weapon upon a human being in connection with the perpetration of the crime of which he was convicted, . . .''

█ The findings made by the trial court establish defendant's ineligibility for probation under the code section quote'd above, and thus the only legally permissible disposition of the case was the sentence which the court pronounced (Pen. Code, § 213).

█ Defendant contends that the trial court erred in failing to obtain a current probation report before pronouncing sentence. The cases upon which he relies, however, involved somewhat different circumstances. In *People* v. *Rojas,* 57 Cal.2d 676 [371 P.2d 300, 21 Cal.Rptr. 564], defendants were convicted and then released on bail. On appeal the ju'dgments were modified and the case remanded to the trial court for the entry of new judgments. The trial court then proceeded to pronounce judgment without obtaining a current probation

report. The Supreme Court reversed, holding the probation report which had been prepared at the time of the first judgment, 15 months earlier, could not constitute a compliance with Penal Code section 1203 at the time of the second arraignment for judgment. The Supreme Court said (at p. 682): "We can conclude only that the Legislature intended, with each contemplated pronouncement of judgment and the concurrent determination of whether to grant or deny probation where an accused is otherwise eligible, that a defendant is entitled to have a current report before the trial judge."

In *People* v. *Causey,* 230 Cal.App.2d 576 [41 Cal.Rptr. 116], defendant was convicted and execution of the judgment was stayed pending appeal. After the judgment was affirmed on appeal defendant applied to the trial court for probation. The trial court denied the application. This order was reversed because the trial court had acted upon the probation report which had been prepared prior to the appeal, and had failed to obtain a current report following the appeal.

In both the *Rojas* and *Causey* cases the defendants were eligible for probation under the statute and they were at large on bail between the time of the first probation report and the time they were arraigned for a second judgment. In the case at bench defendant was ineligible for probation under section 1203 unless the trial court were to find that this was one of the "unusual cases where the interest of justice demands a departure from the declared policy, . . ." The sentencing judge, having tried the case, was familiar with the circumstances of the crime, and he was familiar with the background of the defendant as shown by the probation report prepared immediately after the trial. The court knew defendant had been in the custody of the Director of Corrections ever since the first sentence had been pronounced. A new probation report could have added nothing except to tell how defendant was getting along in prison. We do not think that such additional information, had it been obtained, would have been of any significance in the trial court's determination as to whether this was an "unusual" case. If a literal reading of section 1203 required a further reference to the probation department in this case, lack of it did not prejudice this defendant. (Cf. *People* v. *Henderson,* 226 Cal.App.2d 160, 165 [37 Cal.Rptr. 883].)

Defendant is quite justified in criticizing the abrupt and informal way in which the court appointed counsel for him when he was brought back following the first appeal. The record shows that the trial judge called the case, appointed the

public defender to represent defendant, and began to 'discuss the opinion of the appellate court. The public defender interrupted and the following occurred:

"MR. FINN [Deputy Public Defender]: This defendant informs me he was not represented originally in this matter by a Public Defender, but by Mr. Austin. I wondered perhaps if Mr. Austin might want to represent him in this hearing.

"THE COURT: I don't know. The Court has since appointed counsel—new counsel to represent defendant on appeal, but that as I read the record or transcript here was under 987a of the Penal Code to handle his case on appeal. As far as I know there is no other further appointments. That is why I am appointing you at this time. I will stand on this appointment.

"MR. FINN: Very well, your Honor.

"THE COURT: If the Appellate Court wants to do otherwise they must do so. I am proceeding as I think is right."

The record of the trial shows that the public defender had represented appellant's codefendant. Appellant was represented at the trial by Mr. G. Lenoir, who was appointed by the court pursuant to Penal Code section 987a because of a possible conflict of interest between the two men being tried jointly. Defendant's notice of appeal following the first judgment was signed in propria persona, indicating that Mr. Lenoir's services had been terminated even though no formal substitution of attorneys was filed. On the first appeal defendant was represented by counsel appointed by the court for the purpose of that appeal only. Thus the record is consistent with a finding that defendant was in fact unrepresented when he stood before the trial court following the appeal.

At the time of the rearraignment for judgment the public defender was not disqualified by reason of his having represented a codefendant at the trial. The other defendant was no longer involved, and there is no reason to think that any confidential information obtained through the earlier representation would have been relevant to the matter at hand or could have been used to the detriment of either client. (See Cal. State Bar, Rules of Professional Conduct, rule 5, 52 Cal. 2d 893, 897; Canons of Professional Ethics of the American Bar Association, canons 6, 37.) No conflict of interest prevented the public defender from representing defendant properly at this hearing.

But these circumstances do not justify or excuse the conduct of the trial judge. So far as he knew, defendant might have, in

anticipation of this hearing, retained an attorney who, for some good reason, was not present at the time defendant was delivered into the courtroom by those who had him in custody. The judge might well have taken a moment to ask whether the defendant had an attorney and then whether he desired the court to appoint one.

The services of an attorney may be more than perfunctory when a defendant is brought to the bar for judgment long after trial. (*In re Levi,* 39 Cal.2d 41, 45 [244 P.2d 403]; *People* v. *De Waele,* 224 Cal.App.2d 512 [36 Cal.Rptr. 825].) It is elemental, too, that the right to counsel includes an opportunity for counsel to consult with his client and to make reasonable preparations. (*Powell* v. *Alabama,* 287 U.S. 45, 71 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527]; *In re Newbern,* 53 Cal.2d 786, 790 [3 Cal.Rptr. 364, 350 P.2d 116].)

We assume, however, that the public defender was aware of his responsibilities as attorney for the defendant. He did not ask for time and he did not offer anything on behalf of his client. Presumably he was satisfied that there was nothing to be done.

Reviewing the record as a whole (as commanded by art. VI, § 4½ of the Cal. Const.) we cannot say that defendant suffered any prejudice from the way the matter was handled or that the ultimate result was a miscarriage of justice. It seems not reasonably possible that further proceedings in the trial court would bring about any different result.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.