[No. B025433. Second Dist., Div. Five. Dec. 8, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
TONY LAVELLE GRIMBLE, Defendant and Appellant.

**COUNSEL**

Andrew E. Rubin, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Mark Alan Hart and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BOREN, J.**—The sole issue presented on this appeal is whether the trial court has a mandatory duty to order on its own motion a supplemental

probation report prior to resentencing after a remand from the Court of Appeal. We hold that the trial court has discretion to proceed on the previous probation report and find that there was no abuse of discretion in the instant matter.

## PROCEDURAL BACKGROUND

In 1980, appellant was convicted of one count of kidnapping (Pen. Code, § 209, subd. (b)), three counts of robbery (Pen. Code, § 211), and one count each of rape (Pen. Code, § 261, subd. (2)/261, subd. (3)), burglary (Pen. Code, § 459) and assault with a firearm upon a peace officer (Pen. Code, § 245, subd. (b)). As to each count, it was also found that appellant personally used a firearm within the meaning of Penal Code section 1203.06, subdivision (a)(1) and Penal Code section 12022.5, making appellant statutorily ineligible for probation and adding two years to his sentence. Sentence was imposed on these convictions on March 7, 1980, and appellant received on the kidnapping count a life sentence consecutive to a determinate sentence of a number of years on the remaining counts.

An appeal ensued, followed by a petition to this court for writ of habeas corpus. (Case No. B017419.) The petition was granted to the extent that the conviction on the count alleging kidnapping for the purpose of robbery pursuant to Penal Code section 209, subdivision (b) was reduced to a conviction of attempted kidnapping (Pen. Code, §§ 664/209).

The matter was remanded to the superior court for a resentencing, and the trial court complied on October 20, 1986, more than seven years after the commission of the crimes and more than six years after the original imposition of sentence. At the time of resentencing, the trial court stated that it had "reread the probation report in its entirety," and when asked if he would like to be heard before sentence was imposed, counsel for appellant replied, "No. I will submit it." Appellant was again sentenced to state prison, this time for a total of 16 years 4 months. The attempted kidnapping count was made the principal term of a consecutive sentence and on that principal term, appellant received the high base term of nine years, plus two years for the firearm use enhancement.

## STATEMENT OF FACTS[1]

The evidence established that on July 17, 1979, about 1:30 a.m., Joycelyn Ann B. (Joycelyn) arrived home from work as a telephone operator. As she

[1] This statement of facts is taken from the statement of facts contained in this court's previous opinion concerning appellant's petition for writ of habeas corpus, of which we take judicial notice pursuant to Evidence Code section 452, subdivision (d)(1). (Case No. B017419.)

approached the door to her apartment, she heard footsteps in the hallway. After letting herself in, she locked and barred the door. Her mother, Ellen C., and her daughter, Catherine B., were staying with her. Joycelyn heard a request from outside the door to use the telephone. She told the person to go somewhere else. The doorbell started ringing. She told the person to go away and threatened to call the police. Appellant then kicked in the door. He was holding a handgun. Appellant pulled the telephone out of the wall, pointed his gun at all three of the occupants and demanded money. He dumped the contents of Mrs. C.'s purse on the floor and ordered the women to put all of their possessions into pillow cases. The victims complied by emptying the drawers in the apartment and filling the pillow cases. Joycelyn removed her jewelry and handed it to appellant. Appellant then ordered the victims to remove their clothes, stating that they would not attempt to escape if they were undressed.

After the victims disrobed, appellant pulled Joycelyn into the bathroom and raped her at gunpoint. While appellant was in the bathroom with Joycelyn, Mrs. C. and Joycelyn's daughter went upstairs to the manager's apartment and asked the manager to call the police.

Appellant pulled Joycelyn by the hair out of the bathroom, into the kitchen and through the apartment, ordering her to pick up the pillow cases. Pointing the gun at Joycelyn, appellant demanded she tell him where the car was parked. Joycelyn answered that the car was in the back parking lot, whereupon appellant marched Joycelyn, still naked, outside the apartment's front door.

Appellant pulled Joycelyn down the hallway and through the parking lot to where her car was parked a distance of approximately 55 feet. Joycelyn did not have the car keys so appellant made her empty the pillow cases to look for them. Appellant told Joycelyn he would kill her if she did not produce the keys by the time he counted backwards, starting from 20.

While appellant was counting, an automobile entered the parking lot. Appellant grabbed Joycelyn and pulled her about 10 feet away from the car to hide behind a trash barrel. When it was quiet, appellant forced Joycelyn to return to the car in order to retrieve the second pillow case. At this time, Joycelyn found a set of keys to her mother's car and gave them to appellant. Joycelyn told appellant that she was not certain of the make or color of her mother's car, but she believed it was a blue car parked "in front some place, about by the building."

Appellant then pulled Joycelyn (by the hair) down a four-foot high embankment located at the edge of the parking lot near her car. They traversed through an "apartment yard" to the sidewalk of an abutting street. The record is unclear as to the total distance between the embankment and the street.

As they crossed the street to where a blue car was parked (though not Joycelyn's mother's car) a police car drove by. Joycelyn escaped from appellant and crossed between two parked cars. Appellant was hiding on the other side of the parked car and ordered Joycelyn to return to him and to keep her head down. Instead, Joycelyn ran to the police car and told the officers that appellant had a gun, pointing to appellant's location. Joycelyn then ran across the street, heard shots, and ran back to where the police officers were standing. Appellant was lying on the ground.

## DISCUSSION

Appellant urges that this case must be remanded for a new probation report and for resentencing. He principally relies upon the Fifth Appellate District decision in *People* v. *Brady* (1984) 162 Cal.App.3d 1 [208 Cal.Rptr. 21] , which held that a supplemental probation report is required on remand for resentencing even where the defendant is completely and unalterably ineligible for probation. Respondent, in reliance upon *People* v. *Webb* (1986) 186 Cal.App.3d 401 [230 Cal.Rptr. 755], a Third Appellate District case, contends that when a defendant is statutorily ineligible for probation, the matter of a referral to the probation officer is not mandatory but is a matter committed to the discretion of the trial court. We agree with respondent and find the reasoning and analysis in the *Webb* decision to be persuasive.

The underpinnings and background of the decision in *People* v. *Brady*, *supra*, 162 Cal.App.3d 1, are described and discussed in the *Webb* decision. (*People* v. *Webb, supra*, 186 Cal.App.3d at pp. 406-408.) And although we will not attempt here to duplicate that discussion, we pause to make some observations. We note first the *Brady* court's statement that if it took "at face value . . ." two of the cases which it discusses (i.e., *People* v. *Ware* (1966) 241 Cal.App.2d 143 [50 Cal.Rptr. 252], and *People* v. *Mariano* (1983) 144 Cal.App.3d 814 [193 Cal.Rptr. 47]), "it would follow that no new probation report need be obtained where the defendant being resentenced is completely ineligible for probation." (*People* v. *Brady, supra*, 162 Cal.App.3d 1, 6.) The *Brady* opinion then goes on to cite "statutory and

policy justifications identified by *People* v. *Rojas* [(1962) 57 Cal.2d 676 (21 Cal.Rptr. 564, 371 P.2d 300)] at pages 682-683" for its holding "that upon remand for resentencing, even when the defendant is ineligible for probation, if the resentencing court has discretion to alter the length of the defendant's imprisonment, it must obtain a new, updated probation report, including information regarding the defendant's behavior while incarcerated during the pendency of any apppeal, before proceeding with the resentencing." (*People* v. *Brady, supra,* 162 Cal.App.3d at p. 7.)

We further observe, as did the *Webb* court, that in the *Rojas* decision, each of the defendants, and the prosecutor, as well, asked the trial court to refer the matter to the probation officer for further investigation and the court refused. Furthermore, according to the Supreme Court, the "express terms" of the statute at issue there "require[d] before the pronouncement of *any* judgment an *immediate* referral to the probation officer." (*People* v. *Rojas, supra,* 57 Cal.2d at p. 682, italics in original; see *People* v. *Webb, supra,* 186 Cal.App.3d 401, 407.) Thus, the Supreme Court held in *Rojas* that the trial court was mandated by statute to refer the matter to the probation officer and had no discretion.

In light of the horrendous facts underlying appellant's crimes in the instant case, and the fact that appellant neither requested referral for a supplemental probation report nor objected to proceeding without one, we could consider "the possible applicability of the doctrines of waiver of the right to complain on appeal and harmless error," possibilities the *Webb* court entertained. (*Id.* at pp. 408-409.) But, just as in *Webb,* "we decline to decide this case on those grounds." (*Id.* at p. 409.)

The court in *Webb* noted that "[a]t the time defendant committed his crimes and at the time of his original sentencing, section 1203, subdivision (g) provided: 'If a person is not eligible for probation, the judge may, in his discretion, refer the matter to the probation officer for an investigation of the facts relevant to the sentencing of the person. Upon such referral, the probation officer shall immediately investigate the circumstances surrounding the crime and the prior record and history of the person and make a written report to the court of his findings.' (Stats 1982, ch. 247, § 1, p. 795.) That subdivision has since been amended to provide that where a restitution fine under Government Code section 13967 is required the probation officer must investigate the facts relevant to the amount of the fine. Nevertheless, with respect to whether the probation officer must investigate facts relative to sentencing when the defendant is ineligible for probation, the matter is

still statutorily entrusted to the discretion of the trial court." (*People* v. *Webb, supra,* 186 Cal.App.3d at p. 409.)[2]

■ We agree with the Third Appellate District that this "statute could not be more clear and unambiguous and in the absence of constitutional infirmity, and none appears, we must give effect to the legislative intent. (*People* v. *Magill* (1986) 41 Cal.3d 777, 779 [224 Cal.Rptr. 702, 715 P.2d 662]; *People* v. *Wright* (1979) 92 Cal.App.3d 811, 813 [154 Cal.Rptr. 926].)" (*People* v. *Webb, supra,* at p. 409). ■ Following that court's lead, we "hold that when a defendant is ineligible for probation a referral to the probation officer is not mandatory but is a matter committed to the sound discretion of the sentencing court." (*Ibid.,* fn. omitted.)

■ The next question is whether under the circumstances of this case, the trial court abused its discretion. As appellant notes, there was no plea bargain in the instant matter setting a specific prison term of years. And six years had passed since the imposition of the original sentence. However, it is as clear to this court as it must have been to the trial court and to defense counsel that nothing that occurred during appellant's interim prison incarceration was remotely likely to provide a mitigating circumstance such as to reduce appellant's sentence below the maximum statutory amount he could and did receive.

The original probation report contained three pages of prior record, including prior state prison and California Youth Authority terms and convictions for burglary, grand theft auto, and three robberies, two of which involved violence. In the commission of the instant crimes, appellant displayed great cruelty, depravity and violence. Hence, inasmuch as appellant had previously received a life sentence consecutive to a term of years based on the same facts as the present sentence, how would any amount of good behavior during a six-year period mitigate the sentence any lower?

Although given ample opportunity, neither appellant nor his counsel called to the court's attention any matter which could have been the subject of further probation officer investigation, and the instant record does not reveal that there exists any such matter. In light of these circumstances, we do not find that the trial court abused its discretion in failing to order, on its own motion, a supplemental probation report.

---

[2] In 1979, when appellant committed the instant crimes, subdivision (g), as quoted above, was then subdivision (f) of Penal Code section 1203.

## DISPOSITION

The judgment is affirmed.

Feinerman, P. J., and Hastings, J.,* concurred.

A petition for a rehearing was denied January 7, 1988, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied March 17, 1988.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.