[No. A046860. First Dist., Div. Two. Sept. 5, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ERIC GOLDSTEIN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

466

**COUNSEL**

William Flenniken, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Violet M. Lee, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.**—Eric Goldstein appeals from convictions of sale of cocaine and possession of cocaine for sale. He contends that the trial court erred in failing to instruct that the jurors must agree unanimously on the act constituting the offense, in refusing a requested instruction on the use of circumstantial evidence, and in failing to obtain a probation report before sentencing.

### STATEMENT OF THE CASE

Appellant was charged by information filed April 27, 1989, with sale of cocaine (Health & Saf. Code, § 11352), possession of cocaine for sale (Health & Saf. Code, § 11351.5), and possession of cocaine base (Health & Saf. Code, § 11350, subd. (a)). In connection with count 1, the information further alleged that appellant had violated Health and Safety Code section 11352 by selling cocaine within the meaning of Penal Code sections 1203.073, subdivision (b)(7) and 1203.076, restricting his eligibility for probation. It was also alleged that appellant had suffered a prior narcotic drug offense within the meaning of Health and Safety Code section 11370, subdivisions (a) and (c), precluding probation, and had served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b). At arraignment on April 28, appellant pled not guilty to each count and denied the enhancement allegations.

On July 20, the jury found appellant guilty of sale of cocaine and possession of cocaine for sale, the possession charge having been dismissed during trial. The jury also found true the allegation that appellant had sold cocaine within the meaning of Penal Code sections 1203.073, subdivision (b)(7) and 1203.076. Appellant waived jury trial on the allegations under Health and Safety Code section 11370, subdivisions (a) and (c), and Penal Code section 667.5, subdivision (b), which were found true by the court on July 21. The case was referred to the probation department for preparation of a Penal Code section 1203c report.

On August 2, appellant was sentenced to the upper term of five years for sale of cocaine, a concurrent five-year upper term for the possession for sale, and a consecutive one-year term for the prior prison term. Appellant filed a timely notice of appeal on August 10.

### STATEMENT OF FACTS

At approximately 11 p.m. on March 29, 1989, San Francisco police officer Dale Allen, Jr., was acting as the designated surveillance officer for a

narcotics surveillance in the vicinity of Sixth and Market Streets. Under the police procedure, the surveillance officer would watch from a hidden area and report via portable radio to other officers who would move in and arrest people observed in narcotics transactions. Allen was on the third floor of the office building directly across the street from the Winsor Hotel; he could see the west side of Sixth Street from Market to Stevenson.

Allen noticed appellant standing at the gateway of the Winsor Hotel talking with a white female. Appellant looked around and pulled from the back of his pants, underneath his jacket, a plastic sandwich bag containing a large quantity of white rock-like items. He gave one of these items to the woman, who tasted it with her tongue and then gave appellant some money. Allen knew from his training and experience that a person purchasing crack cocaine tastes it to test its worth and believed a narcotics sale had taken place. When he called for officers to move in for an arrest, however, he found that the other officers had not yet arrived. The woman disappeared from view and appellant entered the Winsor Hotel. Allen admitted on cross-examination that he did not know whether the woman had anything in her hands during the transaction with appellant and did not know what if anything she put into her mouth.

A little more than 10 minutes later, Allen saw appellant emerge from the hotel. Allen alerted his cover officers, who had taken up their positions. A man approached appellant and the two engaged in conversation. Appellant reached behind him and pulled out the plastic bag, took out a rock and handed it to the man; the man tasted it and gave appellant money. Allen, who was using binoculars, could see that the plastic bag contained many rocks. Allen directed his backup officers to move in and observed Officers Bruneman and Cashman grab appellant as he tried to reenter the hotel. Allen also radioed the description of the buyer, who was arrested by Officers Dumont and Hipp.

Officers Bruneman and Cashman, who were waiting in a bar next door to the Winsor Hotel, found appellant at the hotel entrance within seconds of Allen's broadcast, arrested and handcuffed him. They walked appellant into the lobby area and conducted a pat-search which revealed a large wad of money, $1,065, in appellant's pants pocket but no narcotics. Since Allen had advised the officers that appellant had taken the bag of cocaine in and out of the small of his back, Bruneman walked appellant further into the lobby and up some stairs to conduct a more thorough search. Bruneman was about three steps below appellant, explaining what he was doing to Cashman, when he heard "a sliding motion and a thump." Bruneman saw a plastic bag containing rock cocaine on the stair, leaning against appellant's right foot; appellant was wearing two pairs of pants and the top of the

plastic bag was inside the outer pair. Bruneman had been looking at the stairs as they ascended and had not seen anything there before. He did not actually see the bag fall from appellant's body.

The plastic bag held 95 rocks of cocaine of similar size. Bruneman, who had participated in at least 3,000 or 4,000 arrests for crack cocaine, testified that this amount was among the 10 largest with which he had been involved. Subsequent analysis determined that the rocks weighed 23.77 grams and were approximately 84 percent base (crack) cocaine.

Officer Anthony Dumont received a description of the man Allen had seen purchasing drugs from appellant. Dumont found and arrested the man, seizing two rocks of suspected cocaine from his hand. The rocks weighed .81 grams and tested positive for the presence of cocaine.

Sergeant Michael Slade, who had participated in at least fifteen hundred arrests involving cocaine, testified that in his experience many narcotics dealers wear two pairs of pants or two jackets in order to evade identification by changing clothes quickly or hide narcotics in the inner layers of clothing. Slade opined that the bag of cocaine was possessed for sale.

DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . . .

III.

*The Trial Court Did Not Err in Failing to Obtain a Probation Report*

After the jury returned its verdicts of guilty, the court found true the allegation that appellant had suffered a prior narcotic drug offense within the meaning of Health and Safety Code section 11370, subdivisions (a) and (c). This finding rendered appellant ineligible for probation.[5] Stating that appellant was ineligible for probation because of the Health and Welfare Code section 11370 finding and because he was presently on parole, the

---

* See footnote, *ante*, page 465.

[5] Health and Safety Code section 11370, subdivision (a), provides that any person convicted of certain offenses, including those appellant was convicted of, shall not be granted probation if he or she has been previously convicted of an offense involving controlled substances described in subdivision (c).

court then set a date for sentencing under Penal Code section 1203c.[6] The court noted that a presentence report would not be prepared.

At the sentencing hearing, the court indicated it had received from the probation department a "1203c report," a face sheet with a police report attached. The prosecution had submitted a statement in aggravation; defense counsel did not submit a statement in mitigation but argued against the prosecution's statement at the hearing. The court then sentenced appellant to concurrent upper terms on the two convictions.

■ Appellant contends the trial court erred in failing to obtain a probation report before imposing sentence. He claims that while referral to the probation department for a report was at one time discretionary in cases where a defendant was ineligible for probation, amendments to Penal Code section 1203, subdivision (g) in 1984 made the referral mandatory.

Prior to 1984, Penal Code section 1203, subdivision (g) provided: "If a person is not eligible for probation, the judge may, in his discretion, refer the matter to the probation officer for an investigation of the facts relevant to the sentencing of the person. Upon such referral, the probation officer shall immediately investigate the circumstances surrounding the crime and the prior record and history of the person and make a written report to the court of his findings." (Stats. 1982, ch. 247, § 1, p. 795.) In 1984, the statute was amended to read as follows: "If a person is not eligible for probation, the judge shall refer the matter to the probation officer for an investigation of the facts relevant to determination of the amount of a restitution fine pursuant to Section 13967 of the Government Code in all cases where such determination is applicable. *The judge, in his or her discretion, may direct the probation officer to investigate all facts relevant to the sentencing of the*

---

[6]Penal Code section 1203c provides as follows: "Notwithstanding any other provisions of law, whenever a person is committed to an institution under the jurisdiction of the Department of Corrections, whether probation has been applied for or not, or granted and revoked, it shall be the duty of the probation officer of the county from which the person is committed to send to the Department of Corrections a report upon the circumstances surrounding the offense and the prior record and history of the defendant as may be required by the Administrator of the Youth and Adult Corrections Agency. These reports shall accompany the commitment papers. The reports shall be prepared in the form prescribed by the administrator following consultation with the Board of Corrections, except that in a case in which defendant is ineligible for probation, a report upon the circumstances surrounding the offense and the prior record and history of defendant, prepared by the probation officer on request of the court and filed with the court before sentence, shall be deemed to meet any such requirements of form. In order to allow the probation officer opportunity to interview, for the purpose of preparation of these reports, the prisoner shall be held in the county jail for 48 hours, excluding Saturdays, Sundays and holidays, subsequent to imposition of sentence, and prior to delivery to the custody of the Director of Corrections, unless the probation officer shall have indicated need for a lesser period of time."

*person.* Upon such referral, the probation officer shall immediately investigate the circumstances surrounding the crime and the prior record and history of the person and make a written report to the court of his or her findings. The findings shall include a recommendation of the amount of the restitution fine as provided in Section 13967 of the Government Code." (Stats. 1984, ch. 1340, § 3, p. 4725, italics added.)

It is evident that the 1984 amendment made mandatory a referral to the probation department for investigation of facts relevant to determination of the amount of restitution fines while leaving to the court's discretion whether the probation officer must also investigate facts relevant to sentencing. (*People* v. *Webb* (1986) 186 Cal.App.3d 401, 409 [230 Cal.Rptr. 755].) Nothing in the language of the present Penal Code section 1203, subdivision (g), *requires* the court to have the probation officer investigate more than the facts bearing on the restitution fine in the case of a defendant ineligible for probation.

Appellant relies upon *People* v. *Foley* (1985) 170 Cal.App.3d 1039 [216 Cal.Rptr. 865], in which the Third District held that a supplemental presentence probation report must be prepared for use at resentencing following an appeal even where the defendant is ineligible for probation. In reaching this conclusion, the court first determined that a probation report is required prior to the original sentencing of a defendant who is ineligible for probation, then concluded there was no reason for a different rule on resentencing. (*Id.,* at pp. 1046-1047.) The first conclusion was based on the court's observations that Penal Code section 1170, subdivision (b), includes the probation officer's report within the list of items a sentencing court may consider and that rule 418 of the California Rules of Court (all further rule references are to this source) provides the court should refer the matter for a presentence report regardless of the defendant's eligibility for probation. (*Id.,* at pp. 1046-1047.)[7]

In *People* v. *Webb, supra,* the Third District disagreed with its opinion in *Foley* on the authority of Penal Code section 1203, subdivision (g). Indeed, the author of the *Foley* opinion concurred in *Webb* to specifically note that the *Foley* analysis was wrong because it overlooked "the controlling statute: Penal Code section 1203, subdivision (g)." (*People* v. *Webb, supra,* 186 Cal.App.3d at p. 412, Sims, J., conc.) We agree with *Webb* that Penal Code section 1203, subdivision (g), "could not be more clear and unambiguous"

---

[7] *Foley* stated: "Clearly, then, a probation report is required prior to the original sentencing of a defendant who is ineligible for probation." (*Id.,* at p. 1047.) In our view, the conclusion does not flow as inescapably from the authority it relies upon as the opinion would have it appear: Penal Code section 1170, subdivision (b), sets out a list of items the court "may" consider but does not indicate that the court *must* do so, and rule 418 states that cases "should" be referred to the probation department but does not *require* such referral.

and that the decision whether to obtain a probation report before sentencing a defendant ineligible for probation is within the trial court's discretion. (Accord *People* v. *Grimble* (1987) 196 Cal.App.3d 1058, 1064 [242 Cal.Rptr. 382]; *People* v. *McClure* (1987) 191 Cal.App.3d 1303, 1306 [237 Cal.Rptr. 90].) The fact that *Webb, Grimble,* and *McClure* involved resentencing after remand rather than original sentencing, as here, is in our view immaterial, because Penal Code section 1203, subdivision (g) by its own terms applies to initial sentencing.[8]

Appellant does not claim the trial court abused its discretion in failing to obtain a probation report, as he does not recognize the court's discretion in the matter. We can find no abuse of discretion. In the first place, the court did have before it the "1203c report"; appellant did not object at trial to the court's failure to obtain a complete report from the probation department and accordingly may be deemed to have waived this issue. (See *People* v. *Evans* (1983) 141 Cal.App.3d 1019, 1021 [190 Cal.Rptr. 633]; *People* v. *Wagoner* (1979) 89 Cal.App.3d 605, 616 [152 Cal.Rptr. 639]; *People* v. *Medina* (1978) 78 Cal.App.3d 1000, 1007 [144 Cal.Rptr. 581].) Further, we can discern no prejudice from the absence of a full probation report. Since appellant was ineligible for probation, a report could have been useful only with regard to the court's determination of the length of appellant's sentence. The court heard arguments from counsel on aggravating and mitigating factors. While appellant now claims the aggravating factors proposed by the prosecution all related to his history,[9] which was not contained in the "1203c report," the court did not rely upon this history in sentencing. In imposing the upper term, the court stated that the offenses were separate and could have been sentenced consecutively (rule 421(a)(7)); the offense in count 2 involved a large quantity of contraband (rule 421(a)(11)); and appellant was on parole at the time of the offense (rule 421(b)(4)) and therefore his prior performance on parole was not satisfactory. (Rule 421(b)(5).) The first two of these factors are amply supported by the evidence at trial; that appellant was on parole at the time of the offense is documented by the history accompanying the record of his prior conviction. Appellant has not suggested any mitigating factor which might have influenced the trial court; it is not likely he would have suggested any to the

[8]*Foley,* of course, also involved resentencing, considering the question of probation referrals on initial sentencing as the first step in its analysis. Penal Code section 1203, subdivision (g), the statute we find controlling, by its terms applies on initial sentencing.

[9]The aggravating circumstances listed by the prosecution were that the crime involved a large quantity of contraband (rule 421(a)(11)), the defendant's prior convictions as an adult or adjudications of commission of crimes as a juvenile were numerous or of increasing seriousness (rule 421(b)(2)), the defendant had served prior prison terms whether or not charged or chargeable as an enhancement under Penal Code section 667.5 (rule 421(b)(3)), the defendant was on probation or parole when he committed the crime (rule 421(b)(4)), and the defendant's prior performance on probation or parole was unsatisfactory (rule 421(b)(5)).

probation officer, as the Penal Code section 1203c report indicated appellant had declined to discuss the offenses.

The judgment is affirmed.

Benson, J., and Peterson, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 14, 1990.