Filed 3/28/25  P. v. Clark CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DILLION AUSTIN CLARK,<br><br>    Defendant and Appellant. | C099844<br><br>(Super. Ct. Nos. 22CF06029, 23CF00011, 23CF00193, 23CF01952) |

Defendant Dillon Austin Clark pleaded no contest in four cases charging him primarily with sex offenses committed against minors.  Defendant was presumptively ineligible for probation due to prior felony convictions.  The trial court ordered the probation department to prepare a presentencing report.  Defendant refused to be interviewed for the report.  On the day set for sentencing, defense counsel asked the trial court to order the probation department to interview defendant regarding childhood trauma he suffered.  (Pen. Code, § 1170, subd. (b)(6)(A) [presumption for lower term

1

sentence where childhood trauma contributed to commission of the offense] (statutory section citations that follow are to the Penal Code).) The trial court declined the request. Defendant was sentenced to an aggregate term of 13 years 8 months. On appeal, defendant claims the trial court abused its discretion.

We affirm the judgment.

## FACTS AND HISTORY OF THE PROCEEDINGS

The underlying facts of defendant's crimes come from the probation report, which the parties stipulated formed the factual basis for defendant's pleas. The facts and procedure relevant to defendant's claim on appeal are set forth in the discussion section.

Case No. 22CF06029

On December 3, 2022, during a traffic stop, police officers found a cell phone on the front seat of the vehicle defendant was driving. Officers knew that defendant was on parole and subject to search, including search of his cell phone. Officers obtained the password to the phone from defendant's girlfriend, who confirmed defendant used the phone. A forensic evaluation of the phone revealed evidence showing defendant (1) possessed firearms and attempted to trade them, (2) violated section 290 registration requirements, and (3) sent sexual videos to females who identified themselves as 17 years old before the videos were sent.

A complaint deemed an information charged defendant with contacting minors for a sexual offense (§ 288.3, subd. (a); counts 1 and 2); distributing or showing pornography to a minor (§ 288.2, subd. (a)(2); count 3); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 4); and failure to file a change of address (§ 290.013, subd. (a); count 5).

Case No. 23CF00011

In October 2022, 14-year-old K.I. met defendant through social media. K.I. told defendant her age. Defendant told K.I. he wanted to smoke marijuana and perform sexual acts with her. K.I. agreed to meet defendant. Defendant picked up K.I. at her residence and took her to his residence. Defendant and K.I. smoked marijuana and had sexual intercourse in defendant's bedroom. At one point, defendant made K.I. get on her knees and perform oral sex on him.

A complaint deemed an information charged defendant with rape by use of drugs (§ 261, subd. (a); count 1); oral copulation with a person under the age of 16 years old (§ 287, subd. (b)(2); count 2); and meeting a minor for lewd purposes (§ 288.4, subd. (b); count 3).

Case No. 23CF00193

In July 2022, defendant met J.R. through Snapchat and entered into a sexual relationship that lasted about five months. Defendant viewed her I.D. and knew she was 15 years old. In the forensic evaluation of defendant's cell phone, police officers discovered many videos showing defendant and J.R. engaged in various sex acts. One video showed defendant's dog orally copulating his anus.

A complaint deemed an information charged defendant with unlawful sexual intercourse (§ 261.5, subd. (d); counts 1-5); distributing or showing pornography to a minor (§ 288.2, subd. (a)(2); count 6); contacting a minor for a sexual offense (§ 288.3, subd. (a); counts 7 and 8); orally copulating a person under 16 years old (§ 287, subd. (b)(2); counts 9 and 10); possession of child or youth pornography (§ 311.11, subd. (a); count 11); and sexual contact with an animal (§ 286.5, subd. (a); count 12).

Case No. 23CF01952

On October 8, 2022, defendant contacted 16-year-old G.L. by way of social media. G.L. told defendant her age, which was also posted on her social media profiles. The

3

next day G.L. went to defendant's apartment. Defendant took her into the bedroom and removed her clothes. Defendant orally copulated G.L.'s anus and vagina and had sexual intercourse with her. In November 2022, defendant contacted G.L. and asked if she wanted to "do stuff." G.L. wanted marijuana, which defendant said he would give her in exchange for sex. Defendant went to G.L.'s apartment. Defendant and G.L. had sexual intercourse in the back seat of defendant's car. Defendant gave G.L. marijuana.

An amended complaint charged defendant with unlawful sexual intercourse (§ 261.5, subd. (c); count 1); orally copulating a person under age 18 years old (§ 287, subd. (b)(1); counts 2 and 3); contacting a minor for a sexual offense (§ 288.3, subd. (a); count 4); and furnishing cannabis to a minor over the age of 14 years old (Health. & Saf. Code, § 11361, subd. (b); count 5).

<u>Pleas</u> <u>and</u> <u>Sentencing</u>

On August 30, 2023, pursuant to a plea agreement, defendant pleaded no contest to: counts 3 through 5 in case No. 22CF06029; counts 2 and 3 in case No. 23CF00011; counts 1 and 8 through 12 in case No. 23CF00193; and counts 1, 2, 4, and 5 in case No. 23CF01952. The remaining charges were dismissed with a *Harvey* waiver. (*People v. Harvey* (1979) 25 Cal.3d 754.)

On October 25, 2023, the trial court sentenced defendant to an aggregate state prison term of 13 years 8 months. In case No. 23CF01952, the court imposed a five-year upper term on count 5 as the principal term, consecutive eight-month terms for counts 1 and 2, and a consecutive four-month term on count 4. In case No. 23CF00193, the court sentenced defendant to a consecutive one-year term on count 1, a consecutive four-month term on count 8, consecutive eight-month terms on counts 9 through 11, and a concurrent six-month jail term on count 12 to be served in state prison. In case No. 22CF06029, the trial court imposed consecutive eight-month terms for counts 3 through 5. In case

4

No 23CF00011, the court sentenced defendant to a consecutive eight-month term on count 2 and a consecutive one-year term on count 3.

Defendant appeals.

DISCUSSION

Defendant argues the trial court abused its discretion in declining to order the probation department to interview defendant after he initially refused to be interviewed.

Proceedings at Sentencing

On August 30, 2023, the date of defendant's pleas, attorney Grady Davis represented defendant in every case except case No. 23CF01952; attorney Matthew Bently represented defendant in that case. At the plea hearing, Bently appeared in case No. 23CF01952 and for attorney Davis in the remaining cases.

After accepting defendant's pleas, the trial court referred all four cases to the probation department for a presentence investigation and report. Bently promptly stated that defendant "has provided me some very clear instructions regarding this." He explained that, as defendant was ineligible for probation, he "has declined any interview with Probation and does not want to meet with Probation." Defense counsel acknowledged that, under section 1203, subdivision (g), the department was required to investigate regarding a restitution fine but argued the trial court had authority and jurisdiction to sentence defendant that day and impose the fine. Bently reiterated that defendant "rejects any type of Probation interview and would ask that he be sentenced today by this court." The trial court explained that defendant could not be sentenced that day, because "[w]e have some logistical things we need to address before I sentence you, including your credits." Defendant refused to waive time for sentencing. The trial court set sentencing for September 27, 2023.

On September 20, 2023, the probation department filed its report. The report stated: "The defendant declined to participate in the probation interview."

5

On the day set for sentencing, September 27, 2023, defense counsel Bently appeared and stated he had met with defendant, who "informed me that there's the presence of multiple super mitigators in this matter that need to be investigated. [¶] In particular, he has suffered multiple acts of significant childhood trauma which has been reported to law enforcement in the past and which has played a significant role in his life. I believe the presence of these mitigators need to be vetted by probation." Bently asked whether a probation officer attempted to speak with defendant, stating that defendant had said a probation officer did not visit him in jail. A probation officer attending the hearing pointed to the statement in the probation report that defendant declined to be interviewed. Bently argued that sentencing should be continued until October 25, 2023, for the court to direct the probation department to visit defendant and also speak with his mother, "who is able to provide information and direction in regards to the super mitigators which I believe are going to be present."

The prosecutor argued that at the plea hearing defendant was "extremely clear that he would refuse to meet with probation and that he did not want a probation interview." The prosecutor, however, did not object to a continuance. Defendant waived time for sentencing.

The court said: "I will note that on August 30th the defendant wanted to waive a full probation report and wanted to be sentenced immediately. That is far more consistent with his refusal to speak to probation as opposed to probation's failure to try to meet with him." The trial court continued the case for sentencing on October 25, 2023. The attending probation officer asked if the court was requesting the probation department meet with defendant. The court said: "No. I believe they have already attempted that."

On October 23, 2023, attorney Bently filed an objection to sentencing on behalf of defendant in all four cases. Defendant objected to sentencing "because the probation department failed to investigate the case and defendant's background as required by California Penal Code section 1203(b)(1)." Citing section 1170, subdivisions (b)(6) and

6

(b)(7), defendant argued that, notwithstanding his refusal to be interviewed, the probation department had a statutory and ethical obligation to meet with him to investigate "any factors in mitigation or supermitigators" that might be present. Defendant maintained an interview would have discovered his behavior was warped and damaged by childhood trauma he experienced, thereby reducing his culpability. Defendant maintained: "Being a victim of neglect, exploitation, and sexual violence does not excuse [defendant's] behavior, but his experiences, if true, would help explain his behavior."

Attorney Bently attached a declaration from defendant's mother, S.S. S.S. stated that she learned when she was with her second husband that a male nanny living with them had sexually abused her stepdaughter. S.S. reported the nanny to police and he was sentenced to prison. Defendant, aged three at the time, and his one-year-old stepbrother subsequently exhibited behavior that S.S. recognized years later was due to abuse. S.S. also stated that a few years ago defendant told her that, while S.S. was serving a 90-day sentence in jail, she left defendant with a woman who "sexually assaulted him over and over."

Defendant also attached a 2023 news article and press release reporting the conviction of defendant's stepbrother for sex crimes with a child, beginning when the victim was five years old and continuing for two years. In her letter, S.S. described this case as "very similar" to defendant's. Lastly, defense counsel attached an article regarding the short-term and long-term effects of abuse and neglect on children's brains.

On October 25, 2023, the trial court conducted the sentencing hearing. Attorney Davis appeared and joined in Bently's objection to sentencing, stating that in light of the material provided by S.S., all information should be obtained before proceeding to sentencing. Davis further stated that defendant "assured me that he will cooperate in every fashion necessary to be sure that we do the right thing."

The trial court inquired of the probation officer present as to her recollection regarding defendant's statements at the September 27 hearing about whether or not he

7

was going to cooperate with a probation interview. The probation officer responded that, according to the department's docket notes, on August 30, defendant stated he wanted to waive the report and be sentenced that day. The probation officer responded affirmatively to the trial court's inquiry: "So it's your understanding that [defendant] was very clear in his desire to not be interviewed and that was why the interview was not attempted?"

Attorney Davis then interjected: "We've all been around these courtrooms for a long time. People say things in the heat of the moment, under a lot of pressure and often times change their tone. And I think the Probation Department as well, often times have people who are not initially cooperative, and when they go meet with them, a different tone is struck. So this is critical material under [section] 1170. And I think we have nothing to lose by proceeding in that fashion."

The trial court said: "The time for the Probation interview has passed. We will move forward with the sentencing today."

In sentencing, attorney Bently argued for a lower term sentence on the ground that defendant is a "young person who at one point is allegedly a victim of abuse, trauma and sexual assault. And without counseling, and without therapy, and without support, that individual then grows up and becomes an abuser." He further asserted that "this young man has been abused twice in multiple occasion[s] by two separate perpetrators."

In sentencing, the trial court stated that it had to consider the lower term under section 1170, subdivision (b)(6) due to defendant's youth but the lower term would not be in the interest of justice because aggravating factors outweighed mitigating factors. The trial court also observed in mitigation that defendant "may have been suffering from a mental or physical condition that significantly reduced culpability for these crimes."

<u>Analysis</u>

Defendant contends that the probation department is statutorily mandated to investigate and report upon the circumstances of the crime and the defendant's prior history.  Defendant relies on section 1203, subdivision (b)(1).  Section 1203, subdivision (b)(1) provides in relevant part:  "[I]f a person is convicted of a felony *and is eligible for probation*, before judgment is pronounced, the court shall immediately refer the matter to a probation officer to investigate and report to the court, at a specified time, upon the circumstances surrounding the crime and the prior history and record of the person, which may be considered either in aggravation or mitigation of the punishment."  (Italics added.)  (§ 1203, subd. (b)(1); see also Cal. Rules of Court, rules 4.411(a)(1) [trial court must refer a case to a probation officer for a presentence investigation and report if defendant is eligible for probation or a county jail term or is not eligible for probation but a report is needed for other sentencing issues, including determination of the amount of restitution], 4.411.5(a)(4) [probation report must contain "any statement made by the defendant to the probation officer, or a summary thereof, including the defendant's account of the circumstances of the crime"].)

It is undisputed that defendant was presumptively not eligible for probation. (§ 1203, subd. (e)(4) [probation not granted except in the interest of justice to any person previously convicted twice of a felony].)  In that circumstance, subdivision (g) applies: "If a person is not eligible for probation, the judge shall refer the matter to the probation officer for an investigation of the facts relevant to determination of the amount of a restitution fine pursuant to subdivision (b) of Section 1202.4 in all cases in which the determination is applicable.  The judge, in their discretion, may direct the probation officer to investigate all facts relevant to the sentencing of the person.  Upon that referral, the probation officer shall immediately investigate the circumstances surrounding the crime and the prior record and history of the person and make a written report to the court

9

containing findings. The findings shall include a recommendation of the amount of the restitution fine as provided in subdivision (b) of Section 1202.4."

"Nothing in the language of the present Penal Code section 1203, subdivision (g), *requires* the court to have the probation officer investigate more than the facts bearing on the restitution fine in the case of a defendant ineligible for probation." (*People v. Goldstein* (1990) 223 Cal.App.3d 465, 471.) "[W]hen a defendant is ineligible for probation a referral to the probation officer is not mandatory but is a matter committed to the sound discretion of the sentencing court." (*People v. Webb* (1986) 186 Cal.App.3d 401, 409, fn. omitted; *People v. Llamas* (1998) 67 Cal.App.4th 35, 39.) Here, the trial court exercised its discretion to order a report. To prepare the report, the probation officer was entitled to interview defendant, but defendant was entitled to decline the interview. (*People v. Lutz* (1980) 109 Cal.App.3d 489, 496.) By declining the interview, defendant waived the trial court's failure to obtain a complete report. (*Ibid.*; see also *People v. Goldstein*, *supra*, 223 Cal.App.3d at p. 472.)

Thus, as matters stood on September 27, the date set for sentencing, defendant had waived any claim to preparation of a complete probation report, including an interview. When defendant requested a probation interview regarding childhood trauma he claimed to have suffered, he was in effect seeking a supplemental probation report containing a summary of the interview. (See *People v. Webb*, *supra*, 186 Cal.App.3d at p. 406.) The trial court, however, was under no obligation to order it. "[A] supplemental report is required only if the defendant is eligible for probation." (*People v. Llamas*, *supra*, 67 Cal.App.4th at pp. 39-40; Cal. Rules of Court, rule 4.411(a)(1)(B).)

Nonetheless, defendant contends that, as of the September 27 sentencing hearing, the trial court abused its discretion in declining to order an interview, because (1) his counsel had provided the trial court with sufficient information indicating defendant had likely suffered childhood trauma, (2) there was sufficient time to conduct an interview

given the 30-day continuance, and (3) counsel assured the court that defendant would cooperate.

We keep in mind that "[t]he trial court is in the best position to evaluate the need for an updated report, with the input of counsel." (*People v. Bullock* (1994) 26 Cal.App.4th 985, 990.) In this instance, counsel's input consisted of attorney Bently's statement that defendant had informed him that defendant had suffered "super mitigators" consisting of "multiple acts of significant childhood trauma which has been reported to law enforcement in the past and which has played a significant role in his life." Counsel provided no details—indeed, no real facts—to support this allegation. In addition, defendant was represented by two attorneys to advise him on sentencing law. Yet, no explanation was offered for a month-long delay until the day of sentencing to raise the issue of childhood trauma triggering potential application of the statutory presumption for a lower term sentence under section 1170, subdivision (b)(6). (§ 1170, subd. (b)(6)(A); *People v. Tilley* (2023) 92 Cal.App.5th 772 ["section 1170(b)(6), created a presumption in favor of the lower term if a defendant's psychological, physical, or childhood trauma contributed to the commission of the offense"]; see also *People v. Salazar* (2023) 15 Cal.5th 416, 419.)

Nor does defendant's claim that there was sufficient time to conduct an interview given the 30-day continuance indicate the trial court abused its discretion. "If the defendant feels the probation report is insufficient or inaccurate, or is based on unreliable information, he or she may present witnesses to counteract or correct any portion of the report." (*People v. Bloom* (1983) 142 Cal.App.3d 310, 320.) Defendant and his counsel could have utilized the time to develop information supporting the application of section 1170, subdivision (b)(6)(A). That the trial court declined to order an interview while granting a 30-day continuance suggests it was the court's intention to afford defendant this opportunity.

11

Lastly, attorney Davis's assurance of defendant's willingness to cooperate is implicit in the request for a probation interview and does not add to circumstances indicating that the trial court abused its discretion. In fact, to the contrary, that counsel felt compelled to provide this assurance raises some doubt whether defendant was still resistant to an interview by a probation officer. We note an officer from the Chico Police Department responded to a questionnaire from the probation department, asking for comment on sentencing. Regarding defendant's demeanor at the time of apprehension or questioning, the officer stated: "[Defendant] really didn't care & believed he had done nothing wrong. He refused to speak with me regarding the case." Defendant might similarly continue to be resistant to an interview by a probation officer that included "defendant's account of the circumstances of the crime." (Cal. Rules of Court, rule 4.411.5(a)(4).)

Separately, defendant contends that the trial court abused its discretion in refusing to allow defendant to withdraw his waiver of a probation interview. Appellate counsel candidly concedes his inability to find case law on the factors to consider in determining whether the trial court abused its discretion by denying a defendant's request to withdraw a waiver of probation interview. Defendant therefore analogizes this circumstance to withdrawal of a waiver of the right to counsel and the right to jury trial. The analogy is inapposite. The right to counsel and the right to a jury trial are of constitutional dimension, as recognized in the cases defendant cites as the source of the factors he claims should be considered. (See *People v. Elliott* (1977) 70 Cal.App.3d 984, 989 ["Defendant asserts that he was denied the constitutional right of representation by counsel on the theory that he did not make a knowing and intelligent waiver of counsel"]; *People v. Melton* (1954) 125 Cal.App.2d Supp. 901, 905 [cost of jury trial cannot be considered "by the trial court in exercising its discretion to deny a motion for withdrawal of a waiver of jury, for the constitutional guarantee of a jury trial is in no way conditioned upon the fact that the State must bear the cost of supplying the jury in criminal cases"].)

There is no constitutional right to a probation report or supplemental probation report. (*People v. Dobbins* (2005) 127 Cal.App.4th 176, 182.)

In any event, the factors defendant derives from these cases—reason for the request, timeliness, stage of the proceedings, disruption or delay, and inconvenience—do not compel the conclusion that the trial court abused its discretion. On the day set for sentencing, a week after the probation department had filed an extensive report including statements from police officers and a victim's impact statement, defendant made his initial, belated claim of childhood trauma in an attempt to trigger application of section 1170, subdivision (b)(6)(A). This failed attempt was based on information necessarily known to defendant at the time he refused to be interviewed. The significance of this information was also known or should have been conveyed to defendant, who was advised by two lawyers throughout the proceedings, given that section 1170, subdivision (b)(6) had been in effect since January 1, 2022. (Sen. Bill No. 567, Stats. 2021, ch. 731, § 1.3.) Defendant's request thus lacked any compelling reasons, was untimely, and made at a late stage in proceedings. Granting it would have delayed and disrupted the scheduled sentencing and put the parties to the inconvenience of having to return again for sentencing. Applying these factors (if relevant), we conclude the trial court did not abuse its discretion in denying defendant's request.

Having determined the trial court did not abuse its discretion, we need not address defendant's claim that he was prejudiced by the trial court's refusal to order the probation department to interview him.

DISPOSITION

The judgment is affirmed.

HULL, Acting P. J.

We concur:

ROBIE, J.

KRAUSE, J.