Filed 7/21/14  P. v. Berry CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C074645 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-007341) |
| v. | |
| FRANK KING BERRY, | |
| Defendant and Appellant. | |

Pursuant to Penal Code section 1170.126,[1] which had been enacted in November 2012 as an initiative measure, defendant Frank King Berry filed a December 2012 petition to recall his 1999 indeterminate prison term (64 years to life) for resentencing (employing the existing form for recalling a sentence pursuant to section 1170, subd. (d)). The trial court found defendant was eligible for resentencing (§ 1170.126, subds. (c), (e) & (f)) and appointed counsel.  The prosecution conceded that defendant did not pose an

---

[1] Undesignated statutory references are to the Penal Code.

1

unreasonable risk of danger to public safety (§ 1170.126, subds. (f) & (g)) and asked the trial court to refer the matter to the probation department for preparation of a supplemental probation report. The court took the matter under submission following argument, and imposed a new determinate term of 18 years four months.

Looking his gift horse squarely in the mouth, defendant contends on appeal that the trial court abused its discretion in failing to stay two of three drug offense recidivism enhancements (Health & Saf. Code, § 11370.2) because there are "many mitigating factors" in the case.[2] He also contends that the trial court erred in leaving the calculation of *pre*sentence conduct credit to state prison officials, and continued a minor error in the calculation of his *pre*sentence days of custody (which resulted in a reduction of his *pre*sentence conduct credit). Finally, he notes the trial court should have stricken three prison term recidivism enhancements (Pen. Code, § 667.5) instead of staying them. We shall affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

The 1999 indeterminate sentence consisted of a base term of 25 years to life for possessing a controlled substance for sale (methamphetamine), a *consecutive* term of 25 years to life for possessing marijuana for sale, a *concurrent* term of 25 years to life for maintaining a "drug den," and a *stayed* term of 25 years to life for possessing the methamphetamine. The indeterminate term was consecutive to a total of 14 years in recidivism enhancements: three three-year terms for prior drug offense convictions and

---

[2] Although defendant notes in passing that the trial court did not cite any sentencing factors in imposing sentence, it does not appear he intends this as an argument (which in any event would be forfeited for failure to lodge a contemporaneous objection (*People v. Scott* (1994) 9 Cal.4th 331, 353), nor does it appear that he suggests a trial court's refusal to exercise the discretion to strike enhancements pursuant to section 1385 requires it to state reasons (*People v. McCutcheon* (1986) 187 Cal.App.3d 552, 558 [no requirement to state reasons for refusing to exercise power under § 1385]).

five one-year terms for prior prison terms. (There were also concurrent terms for three misdemeanors.)

In our initial opinion on appeal from the judgment (*People v. Berry* (Aug. 5, 2002, C034405) [nonpub. opn.]), we found that section 654 required the sentence on one misdemeanor to be stayed; that his Oregon prior convictions did not come within the meaning of section 667, subdivision (d)(2), requiring resentencing; and that his sentence of 64 years to life was not cruel and unusual. In the course of the latter analysis, we noted defendant's lengthy and continuous criminal history dating back to 1974, and the serious nature of his commitment offenses.[3] The Supreme Court granted review and transferred the matter to us for reconsideration in light of *People v. Avery* (2002) 27 Cal.4th 49; on reconsideration we found the Oregon prior convictions came within the meaning of section 667, subdivision (d)(2) and upheld the originally imposed felony sentence. (*People v. Berry* (Mar. 4, 2003, C034405) [nonpub. opn.].)

The supplemental ("resentencing") probation report prepared in July 2013 noted that since defendant's commitment to state prison in 1999, he had incurred about a dozen minor violations and a dozen major violations (primarily for mutual combat, insubordination, and possession of " 'pruno,' an alcoholic drink brewed illicitly . . . by inmates" (*People v. Abilez* (2007) 41 Cal.4th 472, 489)); it also noted he participated in education courses in which he had a "good attitude" and "made steady progress," and "received acknowledgment for having an exceptional attitude and participation" in his work assignment. Regarding the commitment offenses, the report did not find any mitigating factors relating to defendant or his crimes. In aggravation, it found the crimes

---

[3] During the search of the residence in which defendant was staying, the officers found extensive indicia of sales, intercepted numerous calls asking for defendant and several visitors arriving at the door, and found significant amounts of methamphetamine and marijuana.

reflected a degree of planning and sophistication, represented increasingly serious criminal behavior, and were committed on parole; defendant had a history of poor performance on probation and parole as well. The report thus recommended a sentence structured in the same manner as originally imposed, which by operation of section 1170.126, subdivision (b) now resulted in a determinate term of 21 years four months.

At the resentencing hearing, the prosecutor pointed out that defendant's use of pruno was in accord with his lengthy history of drug violations. The prosecutor also highlighted that defendant's record showed ongoing involvement in the sale of drugs and in theft-related offenses. Thus, he believed the recommended term was appropriate.

Defense counsel objected to consideration of defendant's prison conduct for anything other than the issue of present dangerousness (which was not present),[4] and urged the court to impose a term of 13 years four months. Counsel conceded an upper term for methamphetamine sales and a consecutive term for marijuana sales were appropriate. He argued instead that the court "stay"[5] two of the drug offense recidivism enhancements because—even if this was not impermissible dual use—they were still duplicative of the punishment for two of the prior prison terms, and stay two of the prison term enhancements because they were duplicative of the punishment of a doubled term

---

[4] *People v. Foley* (1985) 170 Cal.App.3d 1039, 1048-1049 held that a supplemental probation report about a defendant's behavior in prison can be used in a remand for resentencing for the purposes of reducing the sentence but not increasing the sentence. (We subsequently limited *Foley* to the extent it held that a supplemental report was mandatory rather than discretionary where a defendant is not eligible for probation (*People v. Webb* (1986) 186 Cal.App.3d 401, 412 (conc. opn. of Sims, J.).) Similarly, when a sentence is recalled pursuant to section 1170, a court may consider circumstances arising after the original sentencing but may not use them to increase the sentence. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 456, 460, 463 [may recall and reduce sentence for defendant testifying in another case].)

[5] As with findings of prior prison terms (see pt. III, *post*), the proper course in fact is to *strike* the findings. (See *People v. Thomas* (2013) 214 Cal.App.4th 636, 640-641.)

based on two of defendant's prior convictions. Counsel also emphasized that defendant was "[59 years] old and slow" with health issues, and the offenses did not involve weapons or violence. Contradicting his earlier objection, counsel offered his opinion, based on his experience with other inmates, that defendant had not embraced any of the negative aspects of prison culture. Defendant told the court that his acts of mutual combat were in defense of himself. He asserted he had diabetes and high blood pressure, and had been treated for cancer of the kidneys and adrenal glands.

In imposing sentence, the trial court stated it had taken defendant's arguments "into consideration because I did stay three of the prison priors and ran another term concurrent instead of imposing all those. I thought in light of all those things, [defendant] was deserving of that"; while it "didn't reduce everything," it "certainly reduced it from where it could have been."

## DISCUSSION

### I. No Abuse of Discretion in Resentencing

Though phrased as an abuse of discretion in "imposing such a lengthy sentence," the focus of defendant's argument is the trial court's failure to strike the two additional enhancement findings for prior drug offense convictions, presumably pursuant to section 1385 (although he does not cite to that statute or to cases applying it, with one exception). Accordingly, we review for an abuse of informed discretion[6] as constrained by factors intrinsic to the sentencing scheme, which include the nature of defendant's commitment offenses, his criminal record, his personal characteristics, and the interests of society in the prosecution of crimes properly alleged. (*People v. Carmony* (2004) 33 Cal.4th 367,

---

[6] Defendant suggests that the trial court may have been misinformed about its discretion not to impose sentence on these findings because trial counsel stated it could stay but not strike them. The court's actions with respect to the findings of prior prison terms belies any such inference.

375; *People v. Orabuena* (2004) 116 Cal.App.4th 84, 98-99; *People v. Superior Court (Jefferson)* (2002) 97 Cal.App.4th 530, 538-539.)  Conversely, this discretion may not take into account factors extrinsic to the sentencing scheme, such as a court's personal beliefs regarding the consequences of the sentencing factors on a particular defendant. (*People v. Williams* (1998) 17 Cal.4th 148, 161; *Orabuena*, *supra*, 116 Cal.App.4th at p. 99; *People v. Bishop* (1997) 56 Cal.App.4th 1245, 1249 (*Bishop*).)  Where the record reflects an informed exercise of discretion based on permissible factors, we will reverse only where those factors so "manifestly support" the exercise of the power to strike that reasonable minds could not differ (i.e., as a matter of law).  (*Carmony*, *supra*, 33 Cal.4th at p. 378.)

Defendant's argument does not engage with this strict standard for reversal.  At best, he simply reasserts the factors that were before the trial court and asks us to come to a different conclusion.  This we may not do.  The trial court was aware of all of the mitigating factors that defendant emphasizes, which motivated the trial court to strike (actually, to stay) the other enhancement findings in order to impose something less than the maximum sentence for which defendant was eligible.  The trial court was also aware the new sentence would make defendant eligible for parole in the near future.  (*Bishop*, *supra*, 56 Cal.App.4th at p. 1251 [under § 1385, trial court may take into account defendant's age and point at which keeping the defendant "as a public charge" makes recidivism unlikely].)  These factors do not *compel* the conclusion that defendant was entitled to *additional* leniency.  That defendant's commitment offenses were "run-of-the-mill" (in defendant's view), lacking the aggravating factors of violence or weapons, simply means defendant is not any different than the average felon and thus is not entitled to any greater consideration than he received, especially in light of a lengthy criminal record showing an unwillingness to avoid controlled substances.  (*Bishop*, at pp. 1250-1251 [criminal record can be aggravating or mitigating factor under § 1385].)  As a

result, we do not find any abuse of discretion in failing to strike the two additional enhancement findings for prior drug convictions.

## II. Defendant Is Entitled to Additional Credit

The original abstract of judgment undercounted defendant's original *pre*sentence custody from March 2 to November 12, 1999, as only 255 days rather than 256 days. As this gives defendant an additional four-day period of custody, he is also entitled to two more days of conduct credit for a total of 128 days (not the 126 appearing in the original abstract and in the supplemental probation report).[7] The People properly concede these errors. The parties also agree that defendant's *post*sentence actual custody through July 9, 2013 (the date of resentencing) is 4,988 days. We thus will modify the judgment to increase his custody credit by one day.

The trial court was under the impression that "the Department of Corrections asked us just to calculate his actual days' credit and not break it down. I don't know why that is." The supplemental probation report had noted "It is their request the Court be provided with actual days served, [and] once resentenced, they will calculate conduct credits accordingly." Thus, the trial court did not include the 128 days of *pre*sentence conduct credit from 1999 in its oral rendition of judgment or in the abstract of judgment. But this request applied only to *post*sentence custody credit determinations, because defendant is in the custody of prison officials; it is the obligation of the trial court, on the other hand, to calculate *pre*sentence custody credit and apply it against the new sentence. (*People v. Buckhalter* (2001) 26 Cal.4th 20, 29, 30, 33; *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1290, fn. 6.) The People properly concede the

---

[7]  We note page two of the amended indeterminate abstract filed March 24, 2003, contains a clerical error in that the local conduct credit is shown as "026" days when it should have stated "126" days, which we are modifying in this opinion.

error.  We accordingly will also modify the judgment to include an award of the 128 days of *pre*sentence conduct credit.

### III.  The Recidivist Enhancements Must Be Stricken

As noted, the trial court decided not to impose three of the five enhancements for prior prison terms on the basis of mitigating factors, so it stayed them.  However, the proper way to achieve this intent is to strike the enhancements.  (See *People v. Langston* (2004) 33 Cal.4th 1237, 1241.)  The People properly concede the error.  We will modify the judgment to specify that the three enhancements are stricken rather than stayed.

### DISPOSITION

The judgment is modified to reflect 5,166 days of custody credit and 128 days of presentence conduct credit for a total of 5,294 days of credit, and the striking of three of the five recidivist enhancements for prior prison terms.  As modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment reflecting these modifications and forward a certified copy to the Department of Corrections and Rehabilitation.


      BUTZ      , J.


We concur:


      RAYE      , P. J.


      MAURO      , J.